## Case No. 4,996.

### FOWLE v. SPEAR.

[11 Law Rep. 130; 7 Pa. Law J. 176; 4 Pa. Law J. Rep. 145; Cox, Am. Trade-Mark Cas. 67; Cox, Manual Trade-Mark Cas. 48.] [1]

Circuit Court, E. D. Pennsylvania. Nov. 7, 1847.

Mr. Ingraham, for complainant,

KANE, District Judge. Is there any case in which a court of equity has interfered to protect a quack medicine?

Mr. Ingraham. The bill alleges that this is "a valuable medicine," and that is uncontradicted; besides, it is not very easy to understand what it meant by a "quack medicine," and what is meant by a "quack" is still harder to define.

KANE, District Judge. In a late trial for libel in this city, it seemed to be the result of the understanding of the most eminent of the faculty who were examined, that a "quack" meant a practitioner who prescribed or recommended a secret medicine.

Mr. Ingraham. That is very intelligible certainly, and of easy application, for unless I am greatly mistaken, the names of

---

[1] [Cox. Manual Trade-Mark Cas. 48, contains only a partial report.]

the most eminent of the faculty are to be found to certificates recommending Swaim's Panacea; but the answer to the suggestion is, that if the plaintiff has no right to the claim he makes and appellation he assumes, another person cannot use his own name, if it be the same as plaintiff's, in such a way as to produce an eventual deception. Sykes v. Sykes, 3 Barn. & C. 541; Croft v. Day, 7 Beav. 84; Hine v. Lart [10 Jur. 106], 2 Sandf. Ch. 600. Damages are recovered at law in such cases. Southern v. How, Poph. 144. And equity interferes by injunction. Dolland v. Bell, Harris v. Callaghan (Rolls, 1825), and Partridge v. Fatman, circuit court of Pennsylvania, May, 1847 [unreported], were cited, and also the Case of Tom Pouce, or General Tom Thumb, in the "Tribunal de Commerce." at Paris, May, 1845; Stratton v. Roqueplan, in which Roqueplan was enjoined from using and announcing in playbills or placards, that one Duhamel would appear in the character of Tom Pouce; which name had become the property of young Stratton, and therefore no one else could use it. These cases were cited from newspaper reports. Gout v. Aleploqlu, 6 Beav. 69, note; Coats v. Holbrook, 2 Sandf. Ch. 586; Taylor v. Carpenter, Id. 603,— were also cited and commented on, and also 2 Keen, 213; 2 Man. & G. 385. It is not at all material that the acts complained of should have been knowingly done. Millington v. Fox, 3 Mylne & C. 338, which case, for the process was secret there, and Croft v. Day, decided the very point presented for adjudication, the resemblance "being sufficient to mislead the ordinary run of purchasers."

Mr. Goodman (and Mr. Guillou was with him) resisted the motion. This claim to protection of mere names is of recent origin, and may be traced to the protection afforded in England to persons who have served apprenticeships before they are permitted to work at a trade. It will not be extended here so as to protect a useless compound, by protecting the shape of bottles, and any designation that may be used to sell articles not clearly of a useful nature; and that is the answer to Croft v. Day, for there is no allegation that Day & Martin's blacking itself is protected by a patent. The case in Popham is clearly on that ground; and Lord Hardwicke's determination not to protect a complainant in the exclusive use of the stamp of the "Great Mogul" on packs of cards, any more than he would prevent "one innkeeper from setting up the same sign with another," 2 Atk. 485, proceeded upon the same principle. The spirit of our patent laws is on the same principle; it must be for some "useful" invention; and in England the doctrine has been applied in practice to publications not deemed of a meritorious character, the piracy of which will not be interfered with by injunction. The cases of Walcot v. Walker, 7 Ves. 1, and Southey v. Sherwood, 2 Mer. 438, illustrate the course of courts of equity; and the case of Pidding v. How, 8 Sim. 477, is conclusive that in this stage of the cause such a court will not interfere, any more than it will in any doubtful case. 3 Paige, 214. In addition to the cases referred to by the complainants, Eden, Inj. 70; Drew. Inj. 235; Canham v. Jones, 2 Ves. & B, 218; Daniell, Ch. Pr. 1869, 1870 (Boston Ed. 1846), and 3 Doug. 293, were cited; as also Snowden v. Noah, Hopk. Ch. 347. Besides, another ground of uncertainty in this case arises from the act of assembly of March 3, 1847 (Pamph. Laws, 198), in relation to "false stamps and labels." It is not clear that the answers to some of the interrogatories of this bill might not involve the defendant in a prosecution under that act; and the same ground upon which he could demur to any matter of that kind, will be his protection from an injunction till answer, if the court have any doubt, whether he is bound to answer at all, derived from the bill itself.

KANE, District Judge. I have considered the application for an interlocutory injunction in this case, and have come to the conclusion that it must be refused. The bill sets forth in substance, that the complainant is the manufacturer of a secret medicine, which he calls "Dr. Wistar's Balsam of Wild Cherry," and that he sells it in bottles of a peculiar form, enclosed in wrappers, which bear certain devices and directions. On one of these wrappers, which is made part of the bill, the balsam is described as "a valuable family medicine for consumption of the lungs, coughs, colds, asthmas, bronchitis, croup, whooping-cough, difficulty of breathing, pains in the side or breast, liver complaints, &c.;" to which another paper, also among the exhibits, adds "influenza, hoarseness, pains or soreness of the chest, &c." The bill then charges, that the defendant has fabricated a different medicine, and is selling it in bottles of the same form, bearing almost the same title, and enclosed in wrappers, which proclaim in the same words exactly the same virtues for the spurious, as are asserted by the complainant for the genuine, balsam. The defendant has not answered, nor filed any responsive affidavit. I should most anxiously avoid every appearance of discourtesy towards parties who have been so honorably represented before me; but speaking from the record, this is plainly a contest, real or simulated,—and whether it be the one or the other, neither the highly respectable counsel, nor the court can know, —between the vendors of a quack medicine, the elements and action of which are not disclosed in evidence. For aught that appears, it may be innocent enough; but though "valuable," as it is sworn to be, to the party who compounds and sells it, it is readily conceivable that to him who buys and takes it, it may be far otherwise. It is

not the office of chancery to intervene, by its summary process, in controversies like this; "non nostrum tantas componere," looking at the incongruous group of diseases, for which the balsam prescribes itself to public credulity, I must apply the principle of the vice chancellor's decision in Pidding v. How, 8 Sim. 477, that a complainant, whose business is imposition, cannot invoke the aid of equity against a piracy of his trade mark. The only remedy in such a case is at law. Motion dismissed.