KOHLER MANUF'G CO. v. BEESHORE.

(Circuit Court of Appeals, Third Circuit. December 4, 1893.)

No. 3.

1. TRADE-MARKS—INTENTION TO ADOPT.
Sales of a few dozen bottles of a medicinal preparation, with written labels affixed, bearing a name different from that previously used for such preparation, does not amount to use in such circumstances as to publicity, and to such length of use, as show an intention to adopt the written words as a trade-mark. 53 Fed. 262, affirmed.

2. SAME—REGISTRY AS EVIDENCE OF INTENTION.
Although registration of a trade-mark under the act of March 3, 1881, may not prevent the adoption of another device as a common-law trade-mark for the same article in domestic markets, such registry may be evidence, in a suit to restrain infringement of such common-law trade-mark, to show what complainant really claimed.

3. SAME—STATEMENT TO OBTAIN REGISTRATION.
In such suit, the statement filed to obtain registration, and attached to the affidavits on motion for a preliminary injunction, may be considered on the final hearing.

4. SAME—INFRINGEMENT.
"One Night Cure," used as a trade-mark for a cough remedy and for a corn remedy, is not infringed by the use of the words "Beeshore's One Night Cough Cure." 53 Fed. 262, affirmed.

5. SAME—INJUNCTION—QUACK MEDICINES.
Query, whether equity will intervene by injunction to protect the use of words claimed as a trade-mark, between owners of quack medicines.

6. SAME—WORDS MAKING FALSE ASSERTION.
It seems that an injunction should not be granted to protect the use of words, as the trade-mark of a medicinal preparation, which assert a manifest falsehood or physiological impossibility.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

In Equity. Bill by the Kohler Manufacturing Company, of Baltimore city, against Ellsworth S. Beeshore, for infringement of a trademark. Bill dismissed. 53 Fed. 262. Complainant appeals. Affirmed.

Statement by SHIRAS, Circuit Justice:

During the year 1888 the firm of the Kohler Medicine Company, composed of Louis Yakel and Charles W. Greble, carried on the proprietary medicine business in Baltimore, Md. Among other preparations, the firm made and sold a cough remedy called "Rocky Mountain Cough Syrup." The formula for this medicine the firm had received from the estate of Dr. P. W. Kohler, together with formulas for other medicines, and also the right to use the name "Kohler" in connection with said remedies, and the business in which they were manufactured. The firm also purchased from the Kohler estate a quantity of the syrup which had been prepared by Dr. Kohler, and all the labels which he had on hand at the time of his death. The cough syrup thus purchased was bottled and labeled, and sold by the Kohler Medicine Company during the spring and summer of 1889, and when the stock was exhausted more syrup was made, and sold under the same label that had been

used by Dr. Kohler. During the early part of 1889, the Kohler Company began to make, and extensively sell, an article which they called "One Night Corn Cure." During November, 1889, the labels for the "Rocky Mountain Cough Syrup" gave out, and the firm concluded to change the name of the remedy, and adopted the name "One Night Cough Cure." They did not use printed labels, but wrote the name upon paper which was pasted on the bottles containing the syrup. Several dozen bottles with this written label appear to have been sold from time to time during November and December, 1889, and perhaps later. The label bore the words "One Night Cough Cure" alone, but the agents who sold it stated that the syrup was made and sold by the Kohler Medicine Company. In February, 1890, a corporation of the state of Maryland was formed, styled "The Kohler Manufacturing Company," and the assets, trade-marks, and business of the firm were transferred to it, and the previous business was continued under the same management. In December, 1890, the corporation filed an application for the registration of the words "One Night Cure" as a trade-mark for a corn remedy and a cough syrup, and on January 20, 1891, a certificate numbered 18,867 was issued to the Kohler Manufacturing Company for said trade-mark. On January 28, 1891, Ellsworth S. Beeshore filed an application for registration of the words "One Night Cough Cure" as a trade-mark for a cough remedy, and for which a certificate was issued to him, dated March 3, 1891, and numbered 19,-112.

On February 17, 1892, the Kohler Manufacturing Company, as a corporation organized under the laws of the state of Maryland, filed its bill of complaint in the circuit court of the United States for the eastern district of Pennsylvania against Ellsworth S. Beeshore, as a citizen of the state of Pennsylvania. In this bill the complainant alleged that, ever since the summer of 1889, it and its predecessor, the Kohler Medicine Company, had been engaged in the manufacture and sale of a medicinal preparation for the cure of coughs and colds, bearing the arbitrary symbol or name of "One Night Cough Cure," which name it had duly adopted as a trade-mark for said article, and had caused the same to be fixed to the bottles containing said syrup by means of labels, and that said article was sold to the public generally, was known to the public as an article made and sold by the complainant company, and that the name "One Night Cough Cure" was recognized as an indication of the ownership and origin of the same. The bill charges that the defendant Beeshore, in the month of November, 1890, and ever since, had manufactured and sold a medicinal preparation of substantially the same descriptive properties as those of the complainant, and bearing printed labels and wrappers, with the name "One Night Cough Cure," in such a manner as was likely to mislead and deceive careless or ignorant purchasers into buying the medicine of defendant in mistake for that of the complainant. The bill prayed for an injunction, account, etc.

On March 15, 1892, the defendant answered, denying that complainant had, since November, 1889, manufactured and sold an article with the name "One Night Cough Cure" as a trade-mark, and denying that complainant was the owner of the said words as a trade-mark. The answer admitted that defendant had, since November, 1890, sold an article of merchandise with label bearing the words "One Night Cough Cure" as a trade-mark, but not with intent to mislead or deceive, and claimed that he was the lawful owner of the trade-mark described, viz. "One Night Cough Cure," by virtue of his having registered the same, and procured a certificate therefor from the United States patent office on March 3, 1891. The defendant further alleged in his answer that the complainant never had affixed the said words to its medicine until defendant had duly adopted it as his trade-mark, and that complainant had interpolated the word "Cough" into the words "One Night Cure," which it had previously used as a trade-mark for a corn remedy, with the purpose of getting the public to mistake complainant's cough cure for that of the defendant.

Issue was joined, evidence taken, and the cause was argued on November 10, 1892, and on November 22, 1892, the opinion and decree of the circuit court were filed, dismissing the bill of complaint, with costs, from which decree the present appeal was taken.

Arthur Stewart, (Price & Stewart, of counsel,) for appellant.

Wm. Henry Browne, for appellee.

Before SHIRAS, Circuit Justice, and ACHESON, Circuit Judge.

SHIRAS, Circuit Justice, after stating the facts, delivered the opinion of the court.

It has been more than once held in this circuit that courts of equity will not intervene by injunction in disputes between the owners of quack medicines, meaning thereby remedies or specifics whose composition is kept secret, and which are sold to be used by the purchasers without the advice of regular or licensed physicians. Fowle v. Spear, (Nov. Term, 1847,) 7 Pa. Law J. 176; Heath v. Wright, 3 Wall. Jr. 141. A similar view has prevailed in several state courts. Wolfe v. Burke, 56 N. Y. 115; Smith v. Woodruff, 48 Barb. 438; Laird v. Wilder, 9 Bush, 132. In the present case, the so-called "trade-mark," "One Night Cough Cure," asserts a manifest falsehood or physiological impossibility. A cough or cold so far seated as to require medical treatment cannot be cured in a single night, and a pretense to the contrary is obviously an imposition on the ignorant. If it be said that the court cannot take notice of such a state of facts, and that there is no evidence from which the court can infer it, we can, at all events, take notice of the plaintiff's evidence, whereby it is shown that the trade-mark in question was not selected because experience had shown that the nostrum availed to cure coughs and cold within the period of a single night, but because a similar trade-mark or designation, "One Night Corn Cure," had proved to be a popular and taking one.

This view of the case was not called to the attention of the court below, nor has it been urged in this court. As the contest is really for the ownership of the trade-mark, the defendant could not be expected to resort to a defense which, if successful, would deprive the coveted words of any market or legal value. It does not appear that the supreme court of the United States has, in any reported case, expressed an opinion on the right of owners of so-called patent medicines to protection by injunction. The reports do show that that court has dealt with trade-mark cases in which proprietary medicines, whose composition was not disclosed, were involved, without condemning them as unfit to receive the protection of courts of equity. Thus, the case of McLean v. Fleming, 96 U. S. 245, is a leading case, often referred to, and related to a trade-mark of a patent medicine. So, too, in the southern district of New York, in the case of Filkins v. Blackman, 13 Blatchf. 440, Judge Shipman protected the trade-mark "Dr. I. Blackman's Healing Balsam." We therefore prefer to determine this case upon the facts and law, as dealt with in the court below.

The plaintiff, in its bill, puts itself upon its adoption and use of a certain phrase or name as a trade-mark, and does not allege the fact that it has registered a trade-mark in the patent office. The trade-mark so registered was "One Night Cure," and the accompanying statement was as follows:

"The trade-mark of said company consists of the words 'One Night' preceding the word 'Cure' or 'Remedy.' These have generally been arranged as shown in the accompanying fac simile of one of their labels, which represents the words 'One Night Cure' printed on a circular label; but the style of printing and the shape of the label are unimportant, and can be varied at will without affecting the character of the trade-mark, the essential features of which are the words 'One Night Cure.' "

Exception is taken to an expression in the opinion of the court below, in which it was said that "the registration was notice to everybody that the trade-mark claimed was what was there set up, and nothing else." It may be that this statement by the court below of the effect of registration was too broad. We are not willing to affirm the proposition that the registration in the patent office of a certain name or phrase as a trade-mark for an article made and sold by the owner will in all cases prevent or estop the owner from adopting and using another name or phrase as a trade-mark, which might become his property by reason of such adoption and use. If, indeed, the legal effect of registry of a trade-mark would be to protect the owner, in all markets, from infringement of the name so registered, it would probably follow that registry of a given name for an article would conclude the owner, and he could not be permitted to claim that his trade-mark was other than that which the registry notified the public was claimed by him. But as the effect of such a registry in the patent office of the United States is restricted by the act of March 3, 1881, (21 Stat. 502,) to the case of a trade-mark to be used in commerce with foreign nations or Indian tribes, the contention that, as to domestic commerce, he might adopt and use a different trade-mark than that registered would seem to be reasonable. As the scope and operation of a trade-mark act is constitutionally confined to foreign commerce, trade with Indian tribes. and commerce between the states, and as the act of March 3, 1881, provides only for a trade-mark to be used in commerce with foreign states and with Indian tribes, a trade-mark might well be adopted and registered for the purpose of those trades, and a different one be used in domestic commerce. Trade-Mark Cases, 100 U. S. 82; Ryder v. Holt, 128 U. S. 525, 9 Sup. Ct. 145. This view is not inconsistent with the doctrine of the case of Richter v. Remedy Co., decided in the western district of this circuit, and reported in 52 Fed. 455. That was the case of a foreigner, who, prior to his registration, had never sold any of his medicines in the United States, and who, not having here a common-law trade-mark, had to depend upon his registry. He alleged in his bill of complaint that the defendants were infringing his trade-mark as registered, and, when met by the defense that the defendants had used the trade-mark prior to the plaintiff's registry, he sought to invoke the doctrine of a common-law trade-mark; and this the court rightfully held he could not do, but that he was restricted to the trade-mark described in his registry. The complainant in that case was unable to support his claim that he had acquired, as against the defendants, a common-law right to the exclusive use of certain words in connection with the manufacture and sale of medical compounds.

Complaint is also made of the court below in holding that there was no sufficient evidence that the plaintiff had acquired a trade-mark in the collocation of words stated. It may be, as is argued by complainant's counsel, that the interference of a court of equity does not depend on the length of time the name has been used, and that the rule is that he who first adopts a trade-mark acquires the right to its exclusive use in connection with the particular class of merchandise to which its use had been applied. Nevertheless, however short the time may be in which a person may acquire a title to a trade-mark, there must be shown an actual intention to acquire such a title. A merely casual use, interrupted, or for a brief period, would not support a claim to a trade-mark. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143. Nor will a court of equity recognize by injunction a proprietary right in a phrase or name, unless it has been used in such circumstances, as to publicity and length of use, as to show an intention to adopt it as a trade-mark for a specific article.

We agree with the court below in thinking that the complainant's evidence in these particulars was very unsatisfactory. A sale of a few dozen bottles, with written labels pasted on the bottles, in the circumstances disclosed by the evidence, could not suffice to establish such an intentional use and appropriation of the words as a trade-mark as to warrant the interference of a court of equity.

Moreover, while we do not think it necessary to hold that mere registry in the patent office of the United States of a trade-mark for a specific article of manufacture would of itself prevent the use and adoption of another device as a common-law trade-mark in domestic markets, yet such registry can operate as evidence tending to show what was really claimed by the complainant. And, in the statement accompanying the complainant's application for a certificate of registry, it is stated that the words "One Night Cure" have been used by the corporation as a trade-mark, continuously, since the middle of January, 1890; and such continuous use is not alleged to have been restricted to the trade of the company with foreign nations and Indian tribes, if, indeed, it has such. We agree with the court below in thinking that the defendant's label or trade-mark, "Beeshore One Night Cough Cure," was so materially different from the trade-mark "One Night Cure" as not to lead to any mistake of one article for the other.

It is, indeed, said that the court cannot take notice of the contents or statements of the complainant's statement in the patent office, because it was neither set up in the bill, nor put in evidence. However, it seems to have come into the case as an exhibit attached to one of the complainant's affidavits used on a motion for a preliminary injunction; and, as the correctness of the copy is not denied, we think that the court below, where it had been read on the preliminary argument, might legitimately refer to it at the final hearing.

Upon the whole, we think the court below was right in its conclusion, and that its decree dismissing the bill should be affirmed.