## AMERICAN WASHBOARD CO. v. SAGINAW MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.   July 13, 1900.)

### No. 780.

1. TRADE-NAMES - DESCRIPTIVE WORDS.

The word "Aluminum," as applied to an article of manufacture composed in part of that metal, cannot be monopolized as a technical trade-mark.

2. SAME—UNFAIR COMPETITION—BASIS OF RIGHT OF ACTION.

The only basis for a private suit for an injunction against unfair competition is the injury to the property rights of the complainant. The fact that the defendant deceives the public as to his goods by fraudulent means, while an important factor in such a suit, does not give a right of action unless it results in the sale of such goods as those of the complainant.[1]

3. SAME—RIGHT TO PROTECTION.

The fact that one has obtained a monopoly in the material of which his goods are made does not give him any broader rights to protection in his trade-name or against unfair competition.

4. SAME.

To entitle one to protection in the use of a trade-name, he must not only have been the first to use it, but must have established a business under it. His adoption of the name with the intention of using it gives him no exclusive right therein as against one who actually uses it before he has carried his intention into practical effect.

5. SAME.

A bill for an injunction against unfair competition alleged that complainant was the manufacturer of a washboard having the rubbing face made of aluminum, and upon which it used the word "Aluminum" as a trade-name; that it was the only manufacturer of such boards in the country, having secured a monopoly of all the sheet aluminum produced which was suitable for use in their manufacture.   It also alleged that defendant had placed on the market a washboard on which it used the word "Aluminum," by reason of which the public was deceived into buying it as a genuine aluminum washboard, although there was in fact none of that metal in its composition.   *Held*, that such bill did not state facts which entitled complainant to relief, since it was not shown that purchasers bought defendant's boards in the belief that they were made by complainant, and any direct injury resulting to complainant could only be by reason of its monopoly, which could not afford ground for equitable relief against a competitor.

Appeal from the Circuit Court of the United States for the Northern Division of the Eastern District of Michigan.

George H. Christy, for appellant.

Edward Rector, for appellee.

Before TAFT,[2] LURTON, and DAY, Circuit Judges.

DAY, Circuit Judge.   This cause is in this court on appeal from an order of the circuit court denying an injunction as prayed for in the bill, and also to reverse the decree sustaining a demurrer to the bill, and dismissing the same.   A perusal of the bill discloses a case which invokes the equitable jurisdiction of the court because of the

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

[2] This case was decided before Judge Taft retired from the court.

interference of the defendant with the trade and good will of complainant in the manufacture and sale of certain aluminum washboards, for which complainant claims to have adopted as a trade-name the word "Aluminum," stamped upon the washboards. It may be stated at the outset that the case is not one for the protection of a trade-mark. It is well settled that a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, cannot be employed as a trade-mark, and the exclusive use of it entitled to legal protection. Canal Co. v. Clark, 13 Wall. 322, 20 L. Ed. 581. It was said by the supreme court, in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 547, 11 Sup. Ct. 400, 34 L. Ed. 1003:

"Nothing is better settled than that an exclusive right to the use of letters, words, or symbols to indicate merely the quality of the goods to which they are affixed cannot be acquired."

To the same effect is the case of Chemical Co. v. Meyer, 139 U. S. 542, 11 Sup. Ct. 626, 35 L. Ed. 248, in which it was said:

"The general proposition is well established that words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trademark."

Indeed, we do not understand that the learned counsel who represents appellant in this case makes any claim that his client is entitled to protection upon the ground that it has adopted the word "Aluminum" as a technical trade-mark. In the brief for appellant it is stated that the case is one of unlawful competition in trade, and it has been argued upon that basis. A brief summary of the bill shows that it contains the following statements: That the complainant is engaged in the manufacture and sale of washboards. That its goods enjoy a high reputation in the market of the United States and elsewhere, having been sold in large quantities. That the superior quality of the washboard so manufactured and sold by complainant had acquired a high reputation with the public. That the complainant, at some date prior to the date of the wrongs complained of in the bill (the exact time not being stated), had devised and manufactured a washboard, the rubbing face of which was made of aluminum. That said metal, on account of its cost, was regarded as one of the precious metals. That its capacity and adaptability to said purpose was unknown up to and at the time complainant adopted it, and by a trial and test showed its adaptability for that purpose. That, the word "Aluminum" never having been used in connection with or applied to a washboard, complainant adopted the word as a trade-mark or trade-name for its aluminum washboards, but did not then go into the business of making and selling said washboards, but, owing to the high price of sheet aluminum, its use was at that time, from a commercial standpoint, practically prohibitive, for which reason complainant suspended the manufacture of such washboards. Afterwards the selling price of aluminum became materially reduced, and though the defendant, about that time, made and sold aluminum washboards,—perhaps 50 or 100,—and represented that it had adopted the word "Aluminum" as a trade-mark or trade-name, defendant never engaged generally in the business and did not secure any rights to said name.

That the selling price of aluminum became so low that it was profitable to resume the manufacture of aluminum washboards, which complainant did, and stenciled the name on each washboard, which trademark or trade-name it has since continuously used to its great benefit and advantage. The public has recognized the fitness of the name, the exclusive right of complainant thereto, and said complainant has made large sales of boards thus branded, and has demonstrated the capability of such washboards. Complainant made only the rubbing face of such washboards of pure aluminum, so that purchasers have come to know or distinguish them by that name; and, but for the illegal acts of defendant, washboards so branded would be recognized as containing a rubbing face of pure aluminum. That complainant, upon entering upon the manufacture of such washboards, made a contract with the Pittsburg Reduction Company, which is a large producer of aluminum, and the only producer of said metal in the United States, whereby it contracted for and purchased and has acquired and will continue to acquire the entire output of sheet aluminum suitable for forming the rubbing sheets of washboards produced or on sale in the United States. That by extensive advertising it built up its present business. That it has expended large sums of money and much time in introducing such washboard under such trade-name. Complainant avers that defendant, well knowing the facts set forth in the bill, has been and now is engaged in the manufacture of washboards in the Eastern district of Michigan and elsewhere, which are branded "Aluminum," advertised by said defendant as aluminum, and sold under that name. That said washboards are not made of aluminum in any part. That in fact no ascertainable quantity is used in the manufacture, particularly in the rubbing sheet thereof. That, being thus branded with the word "Aluminum," and so advertised, purchasers and users are induced to believe that the rubbing sheet is made of aluminum, and induced to buy them from that belief. The fact is that the rubbing sheet of said washboard is made of zinc, long used for such purpose, and containing no aluminum. The washboards manufactured by defendant are approximately the same size and shape as complainant's, and being branded with the word "Aluminum" further tends to mislead purchasers, "so that, when intending to purchase a genuine article (of which complainant is the sole manufacturer), they are led to purchase a fraudulent and falsely branded article of defendant's manufacture, to the great and irreparable injury of your orator therein, as also to the great and lasting injury of the public." And further complainant says it has a right to represent truthfully the quality of its manufacture by the word "Aluminum"; that so long as it continues to be the sole manufacturer of washboards made of pure aluminum, as it expects to continue to be, it has a right to the exclusive use of said name as a trade-mark or trade-name for a washboard, especially as against defendant's misleading use of the same word. The bill prays for the protection of complainant's alleged exclusive right.

The question presented is, is the case thus stated one which entitles complainant to a remedy by injunction and accounting against the defendants? There are numerous cases in the reports upon the sub-

ject of unfair competition in trade. From the general principle running through them all it may be said that when one has established a trade or business in which he has used a particular device, symbol, or name so that it has become known in trade as a designation of such person's goods, equity will protect him in the use thereof. Such person has a right to complain when another adopts this symbol or manner of marking his goods so as to mislead the public into purchasing the same as and for the goods of complainant. Plaintiff comes into a court of equity in such cases for the protection of his property rights. The private action is given, not for the benefit of the public, although that may be its incidental effect, but because of the invasion by defendant of that which is the exclusive property of complainant. In Canal Co. v. Clark, 13 Wall. 322, 20 L. Ed. 583, the court said:

"It is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another."

Mr. Justice Field, in Goodyear India-Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 604, 9 Sup. Ct. 168, 32 L. Ed. 537, said:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacturer, to the injury of the plaintiff."

See, also, McLean v. Fleming, 96 U. S. 251, 24 L. Ed. 828, and Chemical Co. v. Meyer, 139 U. S. 544, 11 Sup. Ct. 627, 35 L. Ed. 249. In the latter case it was said:

"The theory of a trade-mark proper being, then, untenable, this case resolves itself into the question whether the defendants have, by means of simulating the name of plaintiff's preparation, putting up their own medicine in bottles or packages bearing a close resemblance to those of plaintiff, or by the use of misleading labels or colors, endeavored to palm off their goods as those of plaintiff."

The doctrine is well stated in Leather Cloth Co. v. American Leather Cloth Co., 11 H. L. Cas. 523. Lord Cranworth said:

"The right which a manufacturer has in his trade-mark is the exclusive right to use it for the purpose of indicating where or by whom or at what manufactory the article to which it is affixed was manufactured. The gist of the complaint in all of these cases is that the defendant, by placing the complainant's trade-mark on goods not manufactured by the plaintiff, has induced persons to purchase them, relying on the trade-mark as proving them to be of plaintiff's manufacture."

Applying this doctrine to the allegations of complainant's bill, we do not find it anywhere averred that the defendant, by means of its imitation of complainant's trade-mark, is palming off its goods on the public as and for the goods of complainant. The bill is not predicated upon that theory. It undertakes to make a case, not because the defendant is selling its goods as and for the goods of complainant, but because it is the manufacturer of a genuine aluminum board, and the defendant is deceiving the public by selling to it a board not made of aluminum, although falsely branded as such, being in fact a board made of zinc material; that is to say, the theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has

a right to enjoin others from branding any board "Aluminum" not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises. In the case of Leather Cloth Co. v. American Leather Cloth Co., 4 De Gex, J. & S. 137, 11 H. L. Cas. 523, Lord Chancellor Westbury said:

"Imposition on the public, occasioned by one man selling his goods as the goods of another, cannot be ground of private action or suit."

To the same effect is the case of Weener v. Brayton, 152 Mass. 101, 25 N. E. 46, 8 L. R. A. 640, where the court said:

"The jurisdiction of a court of equity to restrain wrongful use of such trade-marks by persons not entitled thereto is founded, not upon the imposition upon the public, but on the wrongful invasion of the right of property therein which has been acquired by others. A remedy is offered only to the owner of the right of property in such trade-marks on account of the injury which is thus done to him. The wrong done to him consists in misrepresenting the vendable articles sold as being those of the true owner of the trade-mark, and thus to a greater or less extent depriving him of the benefit of the reputation he has given to the articles made or dealt in by him."

It is doubtless morally wrong and improper to impose upon the public by the sale of spurious goods, but this does not give rise to a private right of action unless the property rights of the plaintiff are thereby invaded. There are many wrongs which can only be righted through public prosecution, and for which the legislature, and not the courts, must provide a remedy. Courts of equity, in granting relief by injunction, are concerned with the property rights of complainant. The true rule was stated by Lord Chancellor Westbury in Leather Cloth Co. v. American Leather Cloth Co., above quoted, in which the Lord Chancellor says:

"It is, indeed, true that, unless the mark used by the defendant be applied by him to the same kind of goods as the goods of the plaintiff, and be in itself such that it might be and is mistaken in the market for the trade-mark of the plaintiff, the court will not interfere, because there is no invasion of the plaintiff's right; and thus the mistake of buyers in the market under which they in fact take defendant's goods as the goods of the plaintiff—that is to say, imposition on the public—becomes the test of the property in the trade-mark having been invaded and injured, and not the ground on which the court rests its jurisdiction. * * * The true principle, therefore, would seem to be that the jurisdiction of the court in the protection given trade-marks rests upon property, and that the court interferes by injunction, because that is the only mode by which property of this description can be effectually protected. The same things are necessary to constitute a title to relief in equity in the case of the infringement of a right to a trade-mark as in the case of the violation of any other right of property."

If the doctrine contended for by complainant in this case was to be carried to its legitimate results, we should, as suggested by Mr.

Justice Bradley in the case of New York & R. Cement Co. v. Coplay Cement Co. (C. C.) 44 Fed. 277, open a Pandora's box of litigation. A person who undertook to manufacture a genuine article could suppress the business of all untruthful dealers, although they were in no wise undertaking to pirate his trade. Says Mr. Justice Bradley:

"The principle for which counsel for complainant contends would enable any crockery merchant of Dresden or elsewhere interested in the particular trade to sue a dealer of New York or Philadelphia who should sell an article as Dresden china, when it is not Dresden china. * * * A dry-goods merchant selling an article of linen as Irish linen could be sued by all the haberdashers of Ireland and all the linen dealers of the United States."

Take the metal which is the subject-matter of the controversy in this case. Many articles are now being put upon the market under the name of aluminum, because of the attractive qualities of that metal, which are not made of pure aluminum, yet they answer the purpose for which they are made and are useful. Can it be that the courts have the power to suppress such trade at the instance of others starting in the same business who use only pure aluminum? There is a wide-spread suspicion that many articles sold as being manufactured of wool are not entirely made of that material. Can it be that a dealer who should make such articles only of pure wool could invoke the equitable jurisdiction of the courts to suppress the trade and business of all persons whose goods may deceive the public? We find no such authority in the books, and are clear in the opinion that, if the doctrine is to be thus extended, and all persons compelled to deal solely in goods which are exactly what they are represented to be, the remedy must come from the legislature, and not from the courts. A class of cases is cited and much relied upon wherein geographical names have been sustained as trade-names in cases of unfair competition in trade, although not technically trade-marks. These cases seem to establish the doctrine that geographical names, such as "Minneapolis," applied to flour, may be adopted as a trade-name, so that one who undertakes to pirate the trade of another who has established among purchasers this designation of his goods will be entitled to an injunction against one who seeks to avail himself of the reputation thus acquired by imposing upon the public his goods as the goods of complainant. An examination of these cases shows that they are based upon the doctrine which we have already shown to be the basis of equitable interference. See Pillsbury-Washburn Flour-Mills Co. v. Eagle, 30 C. C. A. 386, 86 Fed. 608, and cases therein cited. The doctrine is well stated in the syllabus of the case of Gage-Downs Co. v. Featherbone Corset Co. (C. C.) 83 Fed. 213:

"One making corset waists at Chicago, and selling them as 'Chicago Waists,' so that this designation has come to denote among purchasers the goods made by him, is entitled to an injunction against another who makes similar waists in a different state and city, and sells them as 'Chicago Waists,' with the manifest intent of availing himself of the reputation acquired by the other's goods."

As was said by Judge Severens in that case (page 214):

"The circumstances vary greatly, but the underlying principle which is effective in the solution of such cases is that a party may not adopt a mark or symbol which has been employed by another manufacturer, and by long use and employment on the part of that other has come to be recognized by the

public as denoting the origin of the manufacture, and thus impose upon the public by inducing them to believe that the goods which this new party thus offers are the goods of the original party. In other words, it is a fundamental principle that a man cannot make use of a reputation which another manufacturer has acquired in a trade-mark or trade-name, and, by inducing the public to act upon a misapprehension as to the source of the origin, deprive the other party of the good will and reputation which he has acquired, and to which he is entitled."

Nor do we find anything in the allegations of the bill as to complainant's monopoly in the use of the metal aluminum for washboard purposes which would extend its rights. We are not referred to any case, nor can we think of any reason why one who has obtained a monopoly in the material of which his goods are made should have any broader rights in protecting his trade-name than another who is engaged in competition in the same line of business. The intended adoption of the word "Aluminum" as a trade-mark prior to its use in the manufacture and sale of washboards fails to strengthen the case of complainants, as was said by Judge Coxe in George v. Smith (C. C.) 52 Fed. 830:

"It is the party who uses it first as a brand for his goods, and builds up a business under it, who is entitled to protection, and not the one who first thought of using it on similar goods, but did not use it. The law deals with acts, not intentions."

See, also, Schneider v. Williams, 44 N. J. Eq. 391, 14 Atl. 812, and Manufacturing Co. v. Beeshore, 8 C. C. A. 215, 59 Fed. 572.

The allegations of complainant's bill in this case show that it did not establish its right to use the trade-name "Aluminum" until after the manufacture of boards by defendant. Upon the whole case we are of opinion that complainant's bill lacks the essential allegations necessary to make the case entitling it to the relief sought, and we are of opinion that the demurrer to the bill was properly sustained. This decision makes it unnecessary to pass upon the ruling on the motion for a preliminary injunction. If the bill was demurrable, it cannot authorize the granting of an injunction, and therefore the ruling of the court below was correct in that respect. The decree and order of the court will be affirmed.