### MOXIE NERVE FOOD CO. OF NEW ENGLAND v. HOLLAND.

(Circuit Court, D. Rhode Island. December 12, 1905.)

TRADE-MARKS AND TRADE-NAMES—SUIT FOR INFRINGEMENT—PRELIMINARY IN-JUNCTION.

Statements made on the labels and wrappers of a preparation as to its medical value and the cures it has effected are so largely of matters of opinion rather than statements of fact that, although apparently extravagant, they will not justify a court of equity in refusing a preliminary injunction against an imitator, who is clearly infringing the proprietary rights of the maker.

In Equity. On complainant's motion for a preliminary injunction, and on defendant's motion to dismiss bill for want of equity.

Roberts & Mitchell, for complainant.

Charles A. Wilson and George H. Huddy, Jr., for defendant.

BROWN, District Judge. The complainant has sufficiently proved the unlawful substitution of "Modox" for "Moxie," and is entitled to a preliminary injunction, unless guilty of such fraudulent misrepresentation to the public as to disentitle it to the assistance of a court of equity under the principles set forth in Worden v. California Fig Syrup Co., 187 U. S. 516, 23 Sup. Ct. 161, 47 L. Ed. 282.

The defendant charges fraud in various particulars, only two of which require attention: (1) Statements as to the ingredients of Moxie; and (2) statements as to its curative powers.

Evidence is offered tending to show that Moxie is not prepared as it purports to be, from a "simple sugar cane like plant grown near the equator." The force of the affidavit of George P. Walker to this point is considerably weakened, however, by the stenographic report of his testimony in Moxie Nerve Food Co. v. Chase, and the inconsistency requires explanation which has not been furnished. The chemical analysis seems to account for all but 1.6 per cent. of the contents of a Moxie bottle as nonmedicinal ingredients such as are used in ordinary root beer. As to the possible efficacy of this small quantity of unidentified residuum, there is a conflict of testimony between physicians of the allopathic and homeopathic schools, and the complainant is entitled to the benefit of any doubt upon this point. The existence of a "sugar cane like plant" and of Lieutenant Moxie seem to have been in issue in Moxie Co. v. Baumbach (C. C.) 32 Fed. 205, and to have been decided in favor of the complainant.

The defendant has produced affidavits of a large number of physicians of high reputation, to the effect that the claims of curative ef-

ficiency made upon the Moxie labels and wrappers are absurd, untrue, and, in short, obvious quackery. It is said that the use of the words "Nerve Food" is fraudulent, because there is no such thing as a nerve food; that the claim that it "has recovered brain and nervous exhaustion, also paralysis, softening of the brain, locomotor ataxia, and insanity, when caused by nervous exhaustion" is false and absurd, because paralysis and locomotor ataxia are incurable diseases never caused by nervous exhaustion. A similar opinion is given concerning other statements made upon the wrappers and labels. My attention, however, has been called to no case of authority in which it has been held that representations as to the power of a medicine or preparation to effect cures were fraudulent misrepresentations of fact requiring a dismissal of the bill for want of equity. Proof that testimonials as to particular cures were wholly fictitious would, of course, amount to proof of a fraudulent representation of fact, and would be sufficient to debar a complainant from relief; but to say of a person who took medicine that he was cured or benefited thereby seems to be regarded as more in the nature of an expression of opinion than of a representation of fact.

In School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 105, 106, 23 Sup. Ct. 33, 37, 47 L. Ed. 90, the Supreme Court said:

"As the effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion, even though the great majority may be of one way of thinking, the efficacy of any special method is certainly not a matter for the decision of the Postmaster General within these statutes relative to fraud. Unless the question may be reduced to one of fact as distinguished from mere opinion, we think these statutes cannot be invoked for the purpose of stopping the delivery of mail matter."

Though, by section 3929 of the Revised Statutes [U. S. Comp. St. 1901, p. 2686], the Postmaster General was given power to issue a fraud order, so-called, upon evidence satisfactory to him that a person was conducting a scheme of fraud by the use of the mails, it was held that this did not cover the cases of false opinions, but only cases "of actual fraud in fact, in regard to which opinion formed no basis."

Counsel for the defendant contend that a court of equity should not attempt to determine the merit of a secret or quack medicine, but should dismiss the bill as ipso facto fraudulent. Fowle v. Spear, Cox's Trade-Mark Cases, 67, 7 Pa. Law J. 176.

There is force in the argument that extravagant claims, statements of marvelous recoveries, and secrecy and mystery as to ingredients, are such badges of fraud as to warrant a court of equity in refusing to extend a presumption of good faith to a complainant making such claims, and in refusing relief. See opinion of Mr. Justice Shiras in Kohler Mfg. Co. v. Beeshore, 59 Fed. 572, 8 C. C. A. 215, and cases cited. Unfortunately for the defendant's contention, the case of Fowle v. Spear, supra, seems to be disapproved in the later opinion of Mr. Justice Shiras in Worden v. California Fig Syrup Co., 187 U. S. 516, 527, 23 Sup. Ct. 161, 47 L. Ed. 282. The affidavits of many of the physicians are to the effect that it is a conclusion of common sense that the claims made for Moxie, the statements of its origin, and power to cure serious diseases,

together with the advice of its free use as a beverage by women and all classes of persons, bear on their face the stamp of absurdity, falsehood, and deception. The attitude of the learned doctors towards the complainant's preparation is substantially that of the learned judge in Fowle v. Spear.

It would be, perhaps, consistent with the reasoning in School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 107, 23 Sup. Ct. 33, 47 L. Ed. 90, to hold that statements concerning the efficacy of a secret medicine are to such an extent mere matters of opinion or prediction that it is not practically possible to determine as a fact that the claims are so far unfounded as to justify a court in finding false pretenses. If, however, in respect to ordinary sales, courts of law base the rule of caveat emptor upon the common sense view that, in disposing of their wares, men will not adhere to the truth, and that a vendor's opinion concerning the merit of goods is as a practical matter presumptively unreliable, is it not somewhat inconsistent for a court of equity to act upon a presumption that a patent medicine vendor tells the truth upon his labels and wrappers?

In Deweese v. Reinhard, 165 U. S. 386, 390, 17 Sup. Ct. 340, 341, 41 L. Ed. 757, it was said:

"The right, whatever it may be and from what source derived, must be not only one not protected by legal title, but in and of itself appealing to the conscience of a chancellor. A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."

The appeal to the conscience of a chancellor by one who claims that he has a secret compound which can do what no medicine recognized by the medical profession is able to do, is much weakened by the incredulity of the chancellor as to the truth of the statement. In such cases the appeal often fails to awaken the conscience, and the conscience to command action. See Kohler Mfg. Co. v. Beeshore, 59 Fed. 572, 8 C. C. A. 215.

The statements upon the label or wrapper of a patent medicine bottle do not prove themselves, and are not competent to prove the efficacy of its contents. Notoriety, general use, and commercial value can more readily be attributed to enormous sums expended in advertising than to actual merit. Would it not be reasonable for a court of equity to hold that a complainant seeking to protect his proprietary rights as the owner of a patent medicine should produce legal evidence that it is in fact what it purports to be?

Assuming that the efficiency of medicine is a matter of opinion, the only evidence legally admissible to support claims of this character is the testimony of experts whose qualifications to testify are made to appear to the satisfaction of the court. In this case the complainant has introduced a very large number of affidavits of laymen, who say that they have had various diseases which have been cured by Moxie. It would seem that this evidence is legally inadmissible upon the issue of the curative efficiency of a medicine. The only competent legal evidence to prove this is the testimony of experts giving their opinion. See Commonwealth v. Jacobson, 183 Mass. 242, 66 N. E. 719, 67 L. R. A. 935,

Jacobson v. Massachusetts, 197 U. S. 11, 23, 25 Sup. Ct. 358, 49 L. Ed. 643.

In Samuel Bros. & Co. v. Hostetter Co., 118 Fed. 257, 260, 55 C. C. A. 111, the Circuit Court of Appeals for the Ninth Circuit said, concerning the defendant's argument that no one preparation could possibly be a remedy for numerous and divers ills, and that the preparation was contraindicated for many ailments which it professed to cure:

"The court will not attempt a minute investigation of this field of inquiry. It is one upon which the experts differ. It is enough to advert to the fact that the preparation purports to be a general tonic, and as such efficacious in restoring strength to those weakened by various ailments, and that it has become widely known and largely manufactured and used, and that it has a commercial value. See Hostetter Co. v. Conron (C. C.) 111 Fed. 737, and cases there cited. The argument that it is a quack medicine, and that it is injurious to the human system, and is contraindicated for some of the ailments which it purports to cure, comes with ill grace from those who imitate it as closely as they may without possessing a complete knowledge of its formula, and by unfair trade sell the simulated article as and for the genuine."

The defendant has failed to prove misrepresentation as to the ingredients; and it is a somewhat novel and serious question of law whether the representation as to curative power can be regarded, in view of the decisions to which we have referred, as a representation whose truth may be inquired into. I should be very loth, however, to adopt a rule that in determining whether a complainant comes into court with clean hands we should draw a technical line between representations of pure fact, such as the ingredients of a medicine, and representations as to the curative power of the contents of a bottle, and classify the latter as representations of opinion, the falsity of which is practically incapable of proof. It is quite probable, however, that, in the administration of equity, the courts would refuse to permit a fraudulent imitator to raise the defense of false opinion as distinguished from misrepresentation of pure fact.

The questions which have been presented and which are suggested upon this motion for a preliminary injunction are too important to be disposed of without careful consideration and further argument. No possible view of the case, however, can render it inequitable to enjoin the defendant from fraudulent substitution. The refusal by a court of equity of relief to those who come with unclean hands is not for the benefit of those whose hands also are unclean. It sufficiently appears that the complainant's Moxie is a harmless beverage for which there is a wide demand. Even should it be subsequently proved that, in order to dispose of the harmless beverage, false claims of medicinal virtue had been made, the rights of the parties may be best preserved until final hearing by granting a preliminary injunction. A similar defense of fraud was raised in this circuit before Judge Colt, in Moxie Nerve Food Co. v. Beach, 33 Fed. 248. Though the opinion does not refer specifically to this question, it was distinctly raised by the affidavits; nevertheless, a preliminary injunction was granted.

The motion to dismiss is denied.

The petition for a preliminary injunction is granted.