## A. N. CHAMBERLAIN MEDICINE COMPANY v. H. A. CHAMBERLAIN MEDICINE COMPANY.

[No. 6,258. Filed January 29, 1909.]

INJUNCTION.—*Trade Name.*—*Misrepresentations.*—*Fraud.*—Where a medicine company seeks to restrain another company from using a similar name, thereby deceiving the public and injuring the plaintiff, and it is shown that plaintiff's representations as to the curative properties of its medicine are misleading, dangerous and fraudulent, equity will deny any relief.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Suit by the A. N. Chamberlain Medicine Company against

214    APPELLATE COURT OF INDIANA,

A. N. Chamberlain Co. *v.* H. A. Chamberlain Co.—43 Ind. App. 213.

the H. A. Chamberlain Medicine Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Otto E. Deal, J. M. Van Fleet* and *V. W. Van Fleet,* for appellant.

*James L. Harman,* for appellee.

HADLEY, J.—This is a suit for an injunction by appellant against appellee because of an alleged unfair competition and infringement of the trade name, "A. N. Chamberlain's Immediate Relief." It is sought to restrain the H. A. Chamberlain Medicine Company from using the words "Chamberlain" and "Medicine" in its corporate name, and from using the words "Chamberlain" and "Relief" in the name of its medicine—"H. A. Chamberlain's Infallible Relief." There is a further prayer for $1,000 damages. An answer in two paragraphs, the second alleging that the appellant, prior to and during the pendency of a former action between the parties, used obscene literature in its advertising matter, and falsely advertised and represented its medicine to be a cure for diverse and incongruous diseases, was filed, and the issues were closed by a reply in general denial. The cause was tried by the court, and a judgment rendered for the defendant, from which this appeal is taken.

It appears that A. N. Chamberlain, of Elkhart, Indiana, in 1850, being the owner of a secret formula for compounding a medicine of certain drugs, began to manufacture and sell such medicine under the name of "A. N. Chamberlain's Immediate Relief." In 1891 a corporation was formed in Elkhart, Indiana, to make and sell the medicine, and A. N. Chamberlain transferred thereto all the right, title and interest in the medicine, and such corporation has since continued to manufacture and sell the same. Harvey A. Chamberlain, of Elkhart, whose father was a cousin of A. N. Chamberlain's, in 1902 assisted in organizing the "H. A. Chamberlain Medicine Company," to manufacture a med-

icine from a formula which he owned, and which had been discovered by his father.

It is shown by the uncontradicted evidence that appellant's medicine, known as "Chamberlain's Immediate Relief," was widely advertised and represented to the public as being a certain and effectual cure for the following diverse diseases: "Eczema and yellow fever, Asiatic cholera in its first stages and chilblains, catarrh and sea-sickness, diphtheria and pimples, cholera morbus and bee stings, bites of poisonous reptiles and piles, dysentery and scratches on horses, scarlet fever and sour stomach, measles and cramps, neuralgia and general debility, hysterics and hog cholera, la grippe and bloat, scours in horses, cattle and sheep, diarrhoea and itching and eruptions, bilious fever and wind galls on horses, bloody flux and sick headache, fever and ague, heaves in horses and colic, spotted fever and nervous tremors, sore throat and chicken cholera, cold feet and scalds and burns, rheumatism and earache, dumb ague and cuts and bruises, colds and summer complaint, coughs or colic in man or beast, griping pains and nervous headache, sprains and wounds, toothache and diseases of young lambs"—all from one and the same bottle.

We have enumerated the diseases for which appellant claims its medicine to be a panacea, in the above form in order to show at a casual glance the absurd incongruity of its representations, and thereby illustrate the character of the business that appellant is praying a court of equity to protect. It will be seen that this medicine is claimed to be a sovereign remedy for about all of the ills that flesh is heir to; and if appellant's said representations are to be believed, and they are certainly made for this purpose, then, as is well said in *Fetridge* v. *Wells* (1857), 13 How. Pr. 385, it would seem, that so long as this medicine may be procured, "it will be a folly to grow old, and a mistake to die."

There is another phase of appellant's advertisements we

cannot overlook. It not only recommends its medicine as a cure for diphtheria, along with other diseases, but emphasizes this recommendation with a separate line: "This sure cure for diphtheria for sale by all druggists;" and advises, by what purports to be testimonials, that doctor bills, as well as lives, can be saved by using this specific in cases of diphtheria. This wanton advice, with reference to this known deadly disease, this reckless disregard for the consequences to human life, this palpable falsehood, put forth to deceive distressed, ignorant and credulous people to their detriment, in cases of life and death, in order to make a few more sales of this nostrum, is atrocious and little less than a crime.

"The philosophy of the cure by Chamberlain's Immediate Relief," say these advertisements, "is very simple, and will at once commend itself to every thinking person. It is an antiseptic (against putrefaction), and kills poison whenever it comes in contact with it. It will kill the poisonous bacteria that lodge in the throat, and it will also destroy the terrible little animalculae."

We hardly think it necessary to say more to convince an ordinarily informed mind that the business of appellant, transacted through the medium of the trade name and trademark, that it is sought to have protected by this court, is fraudulent and a deception upon the people. We do not say the medicine has no merit. It is unnecessary for us to pass upon that point, but it is apparent that it cannot have the miraculous virtues ascribed to it; and its advertisements present an attempt at a gross imposition upon the public, as well as a menace to human life.

It is an ancient and equitable rule that, he who comes into a court of equity must come with clean, pure hands and a pure conscience, and it is also well established by the authorities that if a complainant in a court of equity claims relief against the fraud or imposition of others, he must

A. N. Chamberlain Co. *v.* H. A. Chamberlain Co.—43 Ind. App. 213.

himself be free from the same charge with reference to the same matter. If the business of such complainant is, or is sought to be, affected and injured by the misrepresentation or deceit of another, he cannot be heard in a plea that by the fraudulent rivalry of another his own ‚fraudulent profits are destroyed or diminished. The exclusive privilege of deceiving or perpetrating a fraud upon the public is hardly a fit subject to be entertained in a court of equity, and certainly not one that such a court can be required to aid or sanction. *Fetridge* v. *Wells, supra; Pidding* v. *How* (1837), 8 Sim. 477; *Wolfe* v. *Burke* (1874), 56 N. Y. 115; *Laird* v. *Wilder* (1872), 9 Bush 131, 15 Am. Rep. 707; *Kohler Mfg. Co.* v. *Beeshore* (1893), 59 Fed. 572, 8 C. C. A. 215; *Fowle* v. *Spear* (1847), 7 Penn. L. J. 176, Cox, Am. Trade-Mark Cases, 67; *Heath* v. *Wright* (1855), 3 Wall. Jr. 141, Fed. Cas. No. 6,310; *Worden* v. *California Fig Syrup Co.* (1903), 187 U. S. 516, 23 Sup. Ct. 161, 47 L. Ed. 282; *Piso Co.* v. *Voight* (1897), 4 Ohio N. P. 347; *Partridge* v. *Menck* (1848), Cox, Am. Trade-Mark Cases, 72; *Houchens* v. *Houchens* (1902), 95 Md. 37, 51 Atl. 822.

In the case last cited the medicine was represented to be a sure cure for smallpox and diphtheria. The court say that this "not only asserts a falsehood, but was manifestly designed to deceive the public." The court also say: "The rule is well settled by all the cases that a court of equity will not lend its aid to a scheme to defraud the public."

In *Worden* v. *California Fig Syrup Co., supra,* Mr. Justice Shiras, speaking for the court, says: "We find, however, more solidity in the contention, on behalf of the appellants, that when the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in his advertisements and business, be himself guilty of any false or misleading representations; that if the plain-

tiff makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity.'' Numerous cases are therein cited to support this doctrine.

In the case of *Leather Cloth Co.* v. *American Leather Cloth Co.* (1863), 4 DeG., J. & S. 137, the Lord Chancellor says: ''When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in the business connected with it, be himself guilty of any false or misleading representation.''

It is no defense to the charge here discussed that appellee may be in the same respects equally an offender. It will be considered that it, in a like case, would be likewise dealt with.

Appellant's manner of using its trade name and trademark and conducting its business connected therewith is a fraud upon and a danger to the public. The law may permit it, but equity will not protect it.

Many other questions are presented, but as the cause was correctly decided, and could not have been correctly decided any other way, since there is no equity in the case, intervening errors, if any, could not affect the result, and we shall not extend this opinion to consider them.

Judgment affirmed.