**Brian EDWARDS, Mike Merryman, Mike Moffitt, Rodney Turner and T.E.M.M. Marketing, Incorporated, Defendants–Appellants,**

v.

**ACADEMY PUBLISHING CORPORATION and Global Publishing Company, Plaintiffs–Appellees.**

No. 02A03–9007–CV–276.

Court of Appeals of Indiana, Third District.

Nov. 13, 1990.

Joseph Christoff, Christoff & Fox, Fort Wayne, for defendants-appellants.

John F. Lyons, Thomas M. Kimbrough, Barrett & McNagny, Fort Wayne, for plaintiffs-appellees.

HOFFMAN, Presiding Judge.

Appellants Brian Edwards, Mike Merryman, Mike Moffitt, Rodney Turner and T.E.M.M. Marketing appeal a preliminary injunction in favor of Academy and Global Publishing. The facts show that Academy and Global publish specialty newspapers and magazines concerning police and firefighters. Academy and Global pay a police or firefighter organization a flat fee for the right to use the organization's name to solicit advertising for the publications. Any fees for advertising collected after the flat fee is paid to the organization are kept by Academy and Global.[1]

Edwards, Merryman, Moffitt and Turner worked for Academy until April 1990. Edwards, Merryman and Turner entered employment agreements prohibiting use of Academy's customer records following termination of employment. After Edwards, Merryman, Moffitt and Turner stopped working for Academy, they created T.E.M.M., a company that competed with Academy. The trial court found that T.E.M.M. misappropriated Academy's customer records in violation of the Uniform Trade Secrets Act, IND.CODE § 24–2–3–3 (1988 Ed.), and granted the following preliminary injunction:

"Defendants [T.E.M.M.] are now therefore preliminarily enjoined from contacting in any manner any of Plaintiffs' [Academy and Global] customers who have purchased advertising in any of Plaintiffs' publications during the time period December, 1982 through April, 1990."

Appellants contend that the trial court erred in failing to consider whether Academy and Global sought equitable relief with unclean hands. At the preliminary injunction hearing, appellants' attorney argued that since Academy and Global used flat fee contracts they misrepresented their solicitations, committed fraud and came into court with unclean hands. The trial court responded in part:

"I don't see where the relevance of this fraud, let's assume for the sake of argument that they're defrauding thousands of innocent people. These people have sued your Defendants for an injunction. I don't see where this fraud has anything to do with their injunctive relief."

The trial court's decision not to consider whether Academy and Global defrauded the public contradicts the rules of equity:

"It is an ancient and equitable rule that, he who comes into a court of equity must come with clean, pure hands and a pure conscience, and it is also well established by the authorities that if a complainant in a court of equity claims relief against the fraud or imposition of others, he must himself be free from the same charge with reference to the same matter. If the business of such complainant is, or is sought to be, affected and injured by the misrepresentation or deceit of another, he cannot be heard in a plea that by the fraudulent rivalry of another his own fraudulent profits are destroyed or diminished. The exclusive privilege of deceiving or perpetrating a fraud upon the public is hardly a fit subject to be entertained in a court of equity, and cer-

---

1. Academy and Global may have violated the Professional Fundraiser Consultant and Solicitor Registration Act, IND.CODE §§ 23–7–8–1 through 23–7–8–9. IND.CODE § 23–7–8–7(a)(3) (1990 Supp.) states, "A person who solicits charitable contributions may not:

... (3) misrepresent to anyone that the contribution will be used for a charitable purpose if the person has reason to believe the contribution will not be used for a charitable purpose[.]"

tainly not one that such a court can be required to aid or sanction....

... [A] court of equity will not lend its aid to a scheme to defraud the public." [Citations omitted.] *A.N. Chamberlain Co. v. H.A. Chamberlain Co.* (1909), 43 Ind.App. 213, 216–217, 86 N.E. 1025, 1026–1027.

The trial court erred in failing to consider whether Academy and Global defrauded the public by using flat fee contracts for charitable solitation. If the trial court finds that Academy and Global defrauded the public, they are not entitled to equitable relief according to the unclean hands rule.

Reversed.

GARRARD, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I am unable to agree that the trial court was required to consider whether plaintiffs' use of a flat fee contract as between the publishers on the one hand, and the police and firefighters associations on the other hand, was a fraud upon the public so as to make the "unclean hands" defense available to defendants. In order for such a defense to be appropriate, there must be some relationship between the subject matter of the basic lawsuit and the suspect conduct of plaintiff. *Indiana High School Athletic Association v. Raike* (1975) 2d Dist., 164 Ind.App. 169, 329 N.E.2d 66.

The existence *vel non* of arguable fraud upon members of the general public, *other than persons being solicited for advertising,* has no apparent impact or effect upon the competitive use of plaintiffs' advertising prospects and defendants' solicitation of advertising from those contacts. It should be noted that the only allegation by defendants with specific regard to an assertion of "unclean hands" is that plaintiffs' "flat fee contracts with the charitable societies and organizations amount to a fraud perpetrated on the public which is the nexus of the interest sought to be protected by Plaintiffs in their injunction lawsuit." Record at 52–53.

I am unable to discern how a contract between the publisher and the charitable organization which allows the publisher to use the name of the charitable organization in return for a fixed sum payment by the publisher to the charity constitutes a fraud upon the general public. Only if the general public is solicited for contributions to the newspaper on behalf of the charity would such representation be fraudulent in nature.

A different question is presented under a scenario under which plaintiffs make misrepresentations to prospective advertisers. That scenario may be present here.

Defendants allege, although not in specific connection with an "unclean hands" assertion, that plaintiffs defraud the public by soliciting money in the names of various organizations which may or may not be "charitable" and that the funds so raised go to the exclusive benefit of plaintiffs to the extent that those funds exceed the flat fee paid to the "charitable" organizations in return for use of the exclusive right to use the name of the "charitable" organization. If the publisher in soliciting advertising represents that a portion of the advertising revenue will directly benefit the charity it would arguably trigger application of the unclean hands doctrine in this case.

There is evidence here which supports a conclusion that in soliciting advertisers to be listed in the publications of Academy and/or Global the telephone solicitations indicated to potential advertisers that plaintiffs represented publications of particular "charitable" organizations. This representation may be considered to have conveyed the implication that the payment for advertising would directly benefit the "charitable" organizations. In this the representation may have been misleading and may have provided a sufficient nexus between the substance of the plaintiffs' lawsuit, i.e., trade secret violation in solicitation of advertising, and defendants' defense of "unclean hands".

For the reasons stated, I concur in the decision of the majority which implies the

<br>

**63**

necessity for the trial court to reconsider the application of defendants' defense of "unclean hands" in light of defendants' pleadings and in light of the evidence admitted or offered by the parties.