(5 Misc. Rep. 386.)

### BALDWIN et al. v. VON MICHEROUX et al.

(Supreme Court, Special Term, New York County. October, 1893.)

1. PARTNERSHIP—FIRM PROPERTY—TRADE SECRETS.
   Where an employe of a firm invents flavoring compounds with materials supplied by the firm, and it is the intention of all the parties that the processes by which the compounds are prepared shall belong to the firm, and be trade secrets, the firm becomes the owner of the processes, though no assignment thereof is made by the inventor to the firm.

2. SAME—DISSOLUTION—RIGHT TO TRADE-MARKS AND SECRET PROCESSES.
   Secret processes of manufacture, trade-marks, and trade-names, which have been applied to the products of such manufacture, owned by a firm, are not subjects of sale on dissolution of the firm; and therefore each party may, after dissolution, in the absence of an agreement to the contrary, manufacture by such processes, and use such names and marks.

Action by Austin P. Baldwin and another against Albert Von Micheroux and others. Judgment for plaintiffs.

William D. Guthrie, for plaintiffs.
William J. Gaynor, for defendants.

PATTERSON, J. The changed relations of the parties to this action, to its subject-matter, and to each other, caused by the dissolution, after suit brought, of the partnership of Baldwin Bros. & Co., makes it impossible to decree that full measure of relief to which the evidence shows the plaintiffs were entitled at the time of the commencement of the action. The contest between the parties relates to the ownership and right to use a certain secret, but unpatented, process for manufacturing tobacco flavors, and substances for flavoring tobacco, and to certain trade-marks and brands used in the business of the firm of Baldwin Bros. & Co. at the time this suit was brought, and up to January 1, 1893. The members of the firm were the plaintiffs and the defendant George B. Seymour. The defendant Von Micheroux, prior to September, 1892, had been a salesman in the employ of the firm, and the defendant Boulger was also employed by it as an expert compounder of the substances made by the firm for flavoring liquors and tobaccos. While Boulger was thus employed, he was directed to, and did, concoct or invent certain compounds for flavoring tobaccos, and the

firm gave to each substance or compound a certain name and arbitrary designation. This was all done with the full intent of all parties that the firm of Baldwin Bros. & Co. should be the owner of the secret processes by which the substances were prepared, and Boulger invented them, not only while in the employ of the firm, and with materials furnished by it, but knew perfectly well that the invention (if it may be so called) was ardently desired by the members of the firm in order that the trade in tobacco flavors might be added to its business, and that the only value of it to the firm would be in the absolute proprietorship of the formula by which each flavoring substance was prepared, and of its being kept a trade secret. The ownership was the firm's, and not Boulger's. It was not necessary for him to assign his inventions to vest the title in Baldwin Bros. & Co. While that firm could not have acquired ownership thereof unless Boulger was employed to make the inventions, I find, as matter of fact, that he was in effect so employed. The case differs substantially from Burr v. De La Vergne, 102 N. Y. 415, 7 N. E. Rep. 366, and Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. Rep. 193. In the Burr Case, it was held that the inventions of a copartner, made for and used in the business of his firm, and as a result of the employment of copartnership means, did not, simply because of the copartnership relations, become the property of the firm; and, in the Hapgood Case, it was held, only, that under the particular contract in that case an employe was not required to make inventions for his employer, and that the utmost that could be inferred from the allegations of the bill (the question came up on demurrer) was that a license to use the inventions had been given the employer. But in the case at bar the testimony shows that Boulger undertook to make these inventions of substances for flavoring tobacco for the firm by which he was employed. For years, he never claimed or suggested anything to the contrary, and the only legitimate inference to be drawn from the proofs on this part of the case is, and therefore I find the fact so to be, that the firm of Baldwin Bros. & Co. were the proprietors and owners of the secret process or processes referred to, prior to January 1, 1893.

It appears in evidence that, in the summer or early autumn of 1892, Boulger and Von Micheroux left the employment of Baldwin Bros. & Co., and established a firm of A. Von Micheroux & Co., to carry on the business of manufacturing these tobacco flavors, and possibly something more. At about the same time, Seymour began a series of acts constituting as base and flagrant a violation of duty and honor as can well be imagined. While yet bound to his confidential relations with the plaintiffs, he formed a partnership with Boulger and Von Micheroux to carry on the same kind of business, viz. the manufacture of those secret preparations, used every endeavor to divert the custom and business of Baldwin Bros. & Co. from that firm to his new concern, and went to the extent of keeping his new partners informed of all that was being done in his attempt to ruin that branch of the business of Baldwin Bros. & Co.; and the testimony also shows that his fraudulent practices

were inaugurated and carried on with the complicity of Boulger and Von Micheroux, while they were yet in the employment of Baldwin Bros. & Co. Meanness and deceit could scarcely further go, and Von Micheroux and Boulger were directly associated with it. They knew of Seymour's treachery to and fraud upon his unsuspecting partners; and they, with him, are liable to account and pay over, for the benefit of Baldwin Bros. & Co., all profits derived from the sales of the tobacco flavors up to January 1, 1893. If the parties still stood to each other as they did before that day, further relief on this branch of the case might be granted. But the dissolution of the firm operated a severance of the ownership of the secret processes of the flavoring compounds. After that event, either of the partners had the right to manufacture by the secret process, there being no agreement or arrangement to the contrary. Hence, Seymour's doing so since January 1, 1893, was not unlawful.

Respecting the trade-marks, it is well settled that, after a dissolution of a firm, either member may use the devices or symbols, unless he has divested himself of the right. Huwer v. Dannenhoffer, 82 N. Y. 499, and Hazord v. Caswell, 93 N. Y. 259. In this case, it is claimed that Seymour has so divested himself. He has elected, it is said, to have the trade-marks sold, and the proceeds credited to his account, as is shown by Exhibit A. But I do not see how he is estopped by such an alleged election from using the trade-marks or names applied to the compounds, viz. "Latakia" and "Rose" and "Imperial." These names are used as trade designations for the preparations made by the secret processes. They are not salable in gross. They would not only be useless to a purchaser, but cannot constitute property in themselves, or separated from the manufactured articles with which they are connected. In the case cited by the counsel for plaintiffs, in which it has been held that trade-marks are the proper subject of sale, it either distinctly appeared, or was implied, that the trade-mark was sold in connection with the business in which it was used. To quote from Judge Earl in Huwer v. Dannenhoffer, supra:

"A trade-mark is a species of property, which may be sold or transmitted by death, with the business in which it has been used. Leather Cloth Co. v. American Leather Cloth Co., 4 De Gex, J. & S. 137; Manufacturing Co. v. Hall, 61 N. Y. 226."

Now, to sell the secret process by which the flavoring extracts are made would be to destroy the business at once, and to permit the trade-marks to be used in connection with any other substance would be to perpetrate a fraud on the public. They are only valuable to the owners as affixed to goods manufactured by these processes, and an exclusive right to them exists for that reason alone. Therefore, they cannot be sold as mere names or devices or symbols, and the defendant Seymour may now use them, and may do so in connection with the business of the firm of which he is at present a member. The plaintiffs, although they had a right to the temporary injunction at the time it was issued, and to all the relief

prayed for, perhaps, as the parties then stood, are not entitled now to a permanent restraint of the defendants from manufacturing and selling the tobacco flavoring substance or using the trade names or marks mentioned in the testimony, but they are entitled to the following relief: (1) That it be decreed that on and prior to December 31, 1892, the secret processes by which the tobacco flavors were prepared or compounded belonged to the firm of Baldwin Bros. & Co. (2) That the manufacture by such processes and sale of articles so manufactured by the defendants before January 1, 1893, was a fraud upon the plaintiffs, and the defendants are bound to account to the plaintiffs for all profits made by the defendants therefrom, and that a reference be ordered to ascertain the amount of such profits, if any dispute exists on that subject, and that they be paid to a receiver, to be held until the further order of the court in this action, to be made after the settlement and adjustment of the accounts of the partners in the firm of Baldwin Bros. & Co. in any action or proceeding now pending between them, or to be begun. (3) That the defendants be enjoined and restrained from issuing circulars, or otherwise representing that they are the exclusive owners of the secret process above referred to, or of the trademarks and devices used in connection with the goods manufactured by such processes. (4) That the plaintiffs recover the costs of this action, and an extra allowance. As the views set forth herein may require that the proposed findings of both sides be recast, they are returned for additions or modifications either party may desire to make. The plaintiffs' attorneys will submit, with their proposed findings, form of decree, and serve a copy thereof on the defendants' attorneys, and I will hear counsel as to the settlement thereof.