MOXIE NERVE FOOD CO. OF NEW ENGLAND v. MODOX CO. et al.

(Circuit Court, D. Rhode Island. May 15, 1907.)

No. 2,709.

TRADE-MARKS AND TRADE-NAMES—SUIT FOR INFRINGEMENT—RIGHT TO RELIEF IN EQUITY.

The fact that the manufacturer of an article, sold as both a medicine and a beverage, built up its business in part on misrepresentations made upon its labels and wrappers and in its advertisements respecting the medicinal properties of the article will not debar it from relief in equity against unlawful imitation of its trade-name and unfair competition, where it has permanently discontinued such misrepresentations, and makes only such representations as are considered warranted by a substantial amount of medical opinion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 94.

Misleading or false labels, see note to Raymond v. Royal Baking Powder Co., 29 C. C. A. 250.]

In Equity. On motion for preliminary injunction.
See 152 Fed. 493.

Oliver Mitchell and Robert Cushman, for complainant
Geo. H. Huddy, Jr., for defendants.

BROWN, District Judge. After the filing, on February 20, 1907, of the opinion of this court upon final hearing of the previous suit

between these parties, the complainant on March 22, 1907, filed a new bill seeking protection against infringement of the complainant's trade-mark and trade-name, and against unfair competition in trade. This bill presents a case substantially distinct from that in which an injunction was formerly denied.

The bill alleges that upon the filing of the opinion of this court in the case of Moxie v. Holland (on December 12, 1905) 141 Fed. 202, the complainant discontinued the labels formerly in use, and which were dealt with in the previous litigation between the present parties. The complainant has also properly alleged that its article "Moxie" is "a compound which is a beverage and a nerve food; that is, a compound for the nervous system and a restorative agent of value in restoring lost nervous energy, and also of value as a stomachic," etc. The allegations of the bill correspond with the allegations made to the public upon the labels.

The present bill, therefore, is not open to the objection made to the former bill, that the true nature of the business for which protection was sought was not set forth in the bill. The bill is sworn to, and the complainant stands on its rights as proprietor of a preparation which it asserts to be both a beverage and a nerve food.

Upon the present petition for a preliminary injunction the defendants again raise the defense of unclean hands. This rests substantially upon the use by the complainant of the term "nerve food." Affidavits are presented to the effect that the expression "nerve food," as applied to a compound of the character disclosed by analyses, is in the opinion of the affiants "a misrepresentation of such compound, not only being scientifically a meaningless phrase, but as importing colloquially the possession of nerve nourishing or stimulating properties which according to said analyses it cannot possess."

The complainant's affidavits in reply are to the effect that the term "nerve food" has a distinct and well-understood meaning, and is used by physicians and pharmacists. Extracts from medical literature are quoted in support of this. Francis E. Thompson, president of the Moxie Nerve Food Company and custodian of the secret formula by which Moxie is made, makes affidavit that he has submitted the actual formula of Moxie to seven physicians for their opinions as to the truthfulness of the statements on the Moxie labels. He also says that the analyses appended to the defendants' affidavits are erroneous in stating as present ingredients which are not used, and in omitting ingredients which are used. These physicians testify that upon an examination of the formula they find the preparation properly described as a nerve food, and as warranting the statements made concerning it upon the labels. There are also affidavits of physicians who have not examined the formula, but who state that in experience with Moxie they have found it to be substantially as represented upon the labels.

In the opinion in the former case between these parties it was observed:

"This court should not sit as a court of medical inquiry to settle differences of medical opinion."

Weighing the affidavits filed on both sides, it must be said that the complainant has shown that its statements are indorsed by a considerable number of regular practitioners, and therefore that there is a reasonable basis for the complainant's belief in the representations which it now makes to the public.

In the former opinion the court said:

"I am of the opinion that the defendants have been guilty of unlawful imitation of the complainant's trade-name and trade dress, and have also been guilty of such unfair competition that an injunction should issue in behalf of a complainant who showed a right to equitable relief."

Upon the question of unlawful imitation and unfair competition, I am of the same opinion upon the present record. The defense of unclean hands, to avail, must be based upon conditions existing at the time when the party applies for equitable relief. A period of more than 15 months has elapsed since the discontinuance by the complainant of the use of the labels which were found to contain misrepresentations; and it also appears that after the adoption of the new labels the business of the company very largely increased. It is evident that much the larger part of the complainant's business is based upon the merits of Moxie as a beverage; and, while it is doubtless true that the present business was built in part upon misrepresentation, this is not, in my opinion, a sufficient reason for denying relief to a complainant who has removed the objectionable representations from its labels, wrappers, and other advertisements, and who has endeavored to conduct its business making only such representations as are considered warranted by a substantial amount of medical opinion.

A preliminary injunction will be granted.