## W. A. GAINES & CO. v. TURNER–LOOKER CO.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1913. On Petition for Rehearing, May 8, 1913.)

No. 2,279.

1. TRADE-MARKS AND TRADE-NAMES (§ 85*) — VALIDITY OF TRADE-MARK — FALSE STATEMENT FOR REGISTRATION.

A trade-mark, consisting of a word registered on a statement that it had been continuously used as a trade-mark by the applicant and its predecessors in business since a date more than 35 years previously, is not invalidated by the fact that during a part of that time the word was used as a part of a more extended trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT—IMITATION OF NAME.

Complainant and its predecessors for many years have sold a brand of whisky in bottles bearing a label with the trade-name "Hermitage" printed conspicuously thereon in large script, and under such name the whisky has acquired a wide and favorable reputation. Defendant commenced the sale of a different and cheaper brand of whisky in bottles having the name "Golden Heritage" on the labels; the word "Heritage" being printed in large script closely similar to complainant's, while the word "Golden" was in much smaller script in an oblique position. *Held*, that there was such similarity between the two labels as was calculated to deceive the public, and as to constitute an infringement of complainant's trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*

Misleading or false labels, see notes to Raymond v. Royal Baking Powder Co., 29 C. C. A. 250; Holeproof Hosiery v. Wallach Bros., 97 C. C. A. 265.]

3. TRADE-MARKS AND TRADE-NAMES (§ 65*)—"INFRINGEMENT"—EVIDENCE TO ESTABLISH.

To constitute an "infringement" of a trade-mark that will entitle the owner to relief by injunction, it is not necessary that willful intent to deceive be shown; but it will be presumed that defendant intended the natural consequences of its acts, and where it has put its goods on the market under a name so nearly like complainant's as to enable dealers to palm them off as complainant's, and at a price which makes it an object to do so, an invasion of complainant's rights is shown.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590–3594.]

4. TRADE-MARKS AND TRADE-NAMES (§ 85*)—RIGHT TO PROTECTION—FRAUDULENT REPRESENTATIONS ON LABEL—"PURITY" OF WHISKY.

A statement on the label of whisky bottled in bond that its "purity" was guaranteed by the United States government, while not technically true, was not such a fraudulent misrepresentation as should bar the distiller from relief in equity against infringement of its trade-mark, since the stamp may be taken as a guaranty that it is such as is permitted to be bottled by the statute, that it has not been subjected to adulteration or admixture, but is in the same condition as when manufactured,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

except for the process of aging and reduction to 100 proof, and in such condition it may be considered pure for bottling purposes.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—RIGHT TO RE-LIEF—FALSE REPRESENTATIONS ON LABEL.

Untrue statements on labels that the whisky contained in the bottles was manufactured "in the sour mash fire copper way, being singled and doubled in copper stills over open wood fires," and untrue or misleading statements on labels on "bonded" whisky that "this bottling in bond * * * insures to the customer the highest grade of whisky made in this country," are material and misleading representations which under the rule of "unclean hands" deprive the distiller of the right to relief in equity against infringement of its trade-mark used on such labels, until such practice is discontinued.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by W. A. Gaines & Co., a corporation, against the Turner-Looker Company. Decree for defendant, and complainant appeals. Affirmed.

J. L. Hopkins, of St. Louis, Mo. (D. W. Lindsey, of Frankfort, Ky., and Clore, Dickerson & Clayton, of Cincinnati, Ohio, of counsel), for appellant.

Simeon Johnson, of Cincinnati, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. The complainant, which is a corporation engaged in the manufacture of whisky, at Louisville, Ky., filed its bill to restrain defendant from selling whisky under the name of "Golden Heritage," which complainant alleges infringes its trade-mark "Hermitage"; unfair competition, especially by the use of said infringing name, being also alleged. Upon final hearing on pleadings and proofs the bill was dismissed, and the case is here on appeal from that decree.

Several reasons are urged in support of the decree of dismissal:

[1] 1. It is denied that complainant has any valid, technical registered trade-mark. While the existence of a technical trade-mark is unnecessary to sustain a bill for unfair competition, we think complainant shows valid ownership of a technical trade-mark. The trade-mark relied upon is the word "Hermitage." Complainant alleges that this trade-mark has been used by it and its predecessors since 1868. It shows a registration in 1870, a later registration April 11, 1882, and a third, September 13, 1904. The validity of the 1870 registration is assailed because the act of 1870 (Act July 8, 1870, c. 230, 16 Stat. 198), under which it was made, was unconstitutional. Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. That of 1882 is challenged as not registering the trade-mark "Hermitage," because that word was only part

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of a registered trade-mark (apparently designed for stamping upon a barrel head), containing, among others, the words "Hermitage Distillery Copper Distilled Whisky." The distillery of complainant and its predecessors has been long known as "Hermitage Distillery." The only objection made to the validity of the 1904 registration, which embraces only the word "Hermitage," is that the registration statement falsely asserts that the trade-mark "Hermitage" has been continuously used by the said W. A. Gaines & Co. and its predecessors since the year A. D. 1868." We see no merit in this criticism. Its use appears to have been continuous and in good faith; and neither the fact that it was in earlier years used only as part of a more extended trade-mark, nor the possible failure to show effective legal conveyance to complainant of the right to the trade-mark, renders the assertion in the 1904 statement fraudulent.

[2] 2. Infringement of complainant's trade-mark is denied. Complainant's Hermitage brand is confessedly a high-grade whisky, and complainant has built up a large and valuable business in its manufacture and sale. The trade-name and trade-mark are valuable. Complainant's whiskies are bottled "free" and in bond. The word "Hermitage," as used on complainant's labels, is sometimes printed in ordinary capital type, but one of its prominent forms is in script. Defendant uses script alone for the name of its whisky. Complainant's script mark, as used on its labels, and defendant's script mark, as likewise used, are here reproduced:

Complainant's Script Mark.

Defendant's Script Mark.

The similarity in appearance is obvious. Defendant's mark differs from complainant's only in that it omits the letter "m" and has the word "Golden" in much less conspicuous type, obliquely set. On some of defendant's earlier labels the name was followed by the device of

a stork carrying an infant; but the label generally used omits all pictorial design and contains (following the trade-name) only the words: "Bottled in Bond. Straight Pennsylvania Whisky."

[3] We think defendant's mark is calculated to deceive the public, and to enable the palming off of defendant's goods as those of complainant. It is true that defendant's whisky is sold at a much lower price than complainant's; that it is sold largely under mail orders to the direct consumer, or for sale over bars, while complainant's "Hermitage" is sold usually to jobbers, and that defendant's goods are labeled as "Straight Pennsylvania Whisky," while complainant's Hermitage whisky is known to the dealers generally as made in Kentucky; complainant's script labels containing its name, the name and location of its distillery as in Franklin county, Ky., as well as a picture of the manufactory or distillery, all of which, to careful observers, distinguish it in fact from defendant's label. But these differences are not such as to effectively prevent imposition upon the ultimate consumer. Defendant disclaims any attempt to imitate complainant's trade-mark, and presents explanatory testimony of the history of the adoption of its mark. Without attempting to account for this situation, we content ourselves with saying that the similarity is too striking to make the explanation convincing. However, it is not essential that willful intent to deceive be shown. The defendant must be presumed to have intended the natural consequence of its acts, and having put the goods on the market under a name so nearly like complainant's as to enable dealers to palm them off as complainant's and at a price which makes it an object to do so, an invasion of complainant's rights is shown. Tarrant & Co. v. Hoff (C. C. A. 2) 76 Fed. 959, 22 C. C. A. 644; Fairbank Co. v. Luckel, etc., Co. (C. C. A. 9) 102 Fed. 327, 42 C. C. A. 376.

[4] 3. It is urged that if it be conceded that complainant has ꞧ valid trade-mark, and that defendant has infringed it, yet complainant has itself been guilty of misleading representations in the business use of its trade-mark, and therefore is not in position to obtain relief from a court of equity, as coming into court with unclean hands. The misleading representations relied upon are:

(a) That the label on complainant's whisky bottled in bond contains these words:

"Caution: Be sure that the internal revenue stamp over cork and capsule is unbroken, as this guarantees the genuineness, purity, and age of the contents of this bottle."

(b) That complainant's label on its whisky bottled in bond bears this further legend:

"This bottling in bond at the distillery under the supervision of the officers of the internal revenue insures to the consumer the highest grade of whisky made in this country, with guarantee of the United States government as to its age and purity."

(c) That certain of complainant's labels bore these words:

"Bottled at the distillery in bond under supervision of the officers of the internal revenue and guaranteed by the United States government pure and of age indicated by stamp over cork and capsule."

(d) That certain of complainant's labels on "free" bottled whisky contain this statement:

"Distilled at the Hermitage distillery, Franklin county, Kentucky, this whisky is bottled at the distillery under our personal supervision and guaranteed absolutely pure and unadulterated."

(e) That certain of complainant's labels bore the statement that the whisky was manufactured—

"in the sour mash fire copper way, being singled and doubled in copper stills over open wood fires."

The representations contained in (a), (b), and (c), above, may be considered together. The criticisms of these three forms of labels are, first that the government does not guarantee the purity of the whisky; and, second, that the bottling in bond does not insure to the consumer the highest grade of whisky.

The court below was of opinion that the representations contained in statements (a) and (b) were misleading, and dismissed the bill for this reason, and because it was of opinion that any one desiring Hermitage whisky, and being accustomed to the way it had been labeled, would not be deceived by defendant's label. It is true that the government does not guarantee the purity of whisky bottled in bond in the commercial sense, as being merchantable and free from any element of commercial unsoundness; for example, it is established that whisky may be unsound, that is to say, made from an impure grain and so be unmerchantable, also that the same may result from bad cooperage, and that the internal revenue officers pay no attention to such conditions. The presence of the stamp does, as we undersand the record, practically guarantee the age and the genuineness of the whisky, because it identifies the date of manufacture and of bottling, and gives assurance that the whisky as bottled is the same as when manufactured, except as aged and to the extent that water may be added to reduce to 100 proof. The question in this connection turns, then, upon the definition of purity. The act which allows the bottling of distilled spirits in bond (Act March 3, 1897, c. 379, 29 Stat. 626 [U. S. Comp. St. 1901, p. 2150]) forbids "any mingling of different products, or of the same products of different distilling seasons, or the addition or the subtraction of any substance or material or the application of any method or process to alter or change in any way the original condition or character of the product except as herein authorized," the exceptions not being here material. In the report of the committee which submitted to the House of Representatives the draft of the statute in question, it is said that:

"The obvious purpose of the measure is to allow the distilling of spirits under such circumstances and supervision as will give assurance to all purchasers of the *purity of the article* purchased, and the machinery devised for accomplishing this makes it apparent that this object will certainly be accomplished." (Italics ours.)

This report may properly be resorted to for the purpose of determining the scope of the statute passed on the strength of it. Binns v. United States, 194 U. S. 486, 24 Sup. Ct. 816, 48 L. Ed. 1087. We

think it a reasonable interpretation that whisky is to be deemed pure for bottling purposes if it is free from the faults referred to in the statute; in other words, if it is in the condition as manufactured, changed only by the process of aging and the reduction to 100 proof. While it is not, strictly speaking, true that the government guarantees anything, yet the distinction between a guaranty by the government and a guaranty afforded by the stamp affixed by government authorities is not so great as to suggest intentional fraud. Statements contained in labels which are not strictly accurate, but are entirely immaterial, are not such false misrepresentations as will deprive a manufacturer using such labels of the right to injunction against infringement. Tarrant v. Hoff, supra; Jacobs v. Beecham, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729. And if the defense rested alone on the references to purity, contained in statements (a), (b), and (c), we should not be disposed to hold them sufficient to justify a denial of relief to complainant.

The same considerations apply to the suggestion that at the time this suit was begun complainant was using barley malt, and that therefore its rye whisky was not pure rye. There is evidence, as we construe the record, indicating that dealers generally did not understand that the use of barley malt made an otherwise rye whisky impure. It is not easy, however, to justify the assertion in statement (b) that "this bottling in bond * * * insures to the consumer the highest grade of whisky made in this country," because, first, complainant itself seems to have made a higher grade; and, second, its mere bottling, under supervision of the revenue officers, furnished no assurance of high grade, except as involved in age, purity, and proof.

[5] As to statement (d): Free whisky is not bottled at a distillery. Complainant's free whisky was in fact bottled in a building remote from its distillery, and under complainant's orders, but by rectifiers who (except in one instance named) served complainant only. This representation would seem immaterial, except as it may induce a belief that the whisky is 100 proof, as whisky bottled in bond must be, while free whisky is usually bottled at from 90 to 95 per cent. proof. It would seem not improbable that one who knew that whisky bottled in bond must be 100 proof would naturally know also that whisky so bottled must bear the government stamp, and, as free whisky bears no stamp, would not be misled by this representation; and it may be that, if this representation stood alone, we would not think it sufficiently important to justify denying relief to complainant.

As to representation (e): The terms "singled" and "doubled" refer to the first and second boilings. It is established that the first boiling is done by steam, and that the second boiling is done over a wood fire, not open, but in a closed furnace. We cannot say that this is an immaterial misrepresentation. While whisky singled and doubled over open wood fires may not be superior to that obtained by the processes employed by complainant, the record indicates that many users of whisky think that the open fire process is superior, and so might well be misled and deceived by this misrepresentation.

Taking the whole case together, we are impressed that the mis-

statements complained of are not so trivial as to bring the case within Jacobs v. Beecham, where the representations held harmless were said to be "small survivals from a time when they were literally true," and that the case is thus brought within the rule of "unclean hands."

We are not satisfied that complainant had discontinued all the misleading representations, and the decree of the Circuit Court must therefore be affirmed. But, the trade-mark not being itself fraudulent, the affirmance should be without prejudice to the institution of a new suit for injunction whenever complainant shall have put an end to the misleading representations.

## On Petition for Rehearing.

But one matter seems to call for special mention: In the opinion filed March 7th last, it is said (speaking of the representation that complainant's whisky was "singled and doubled in copper stills over open wood fires") that:

"The record indicates that many users of' whisky think that the open-fire process is superior, and so might well be misled and deceived by this misrepresentation."

A reference to the record now made fails to disclose such evidence, and the statement in that regard is apparently an error. This mistake does not, however, justify a rehearing, because, first, the representation in question was not the only respect in which complainant was held to offend; and, second, in the absence of evidence to the contrary (and we find no such evidence), it is to be presumed, from the fact that the representation was made, that a portion at least of the public was expected to regard it as material, and, if so, we cannot say, upon this record, that it was immaterial.

On careful consideration of the petition, we think a rehearing is not justified.