DIAMOND CRYSTAL SALT CO. v. WORCESTER SALT CO.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 152.

1. TRADE-MARKS AND TRADE-NAMES ☞3—DESCRIPTIVE WORDS—SECONDARY MEANING.

Where the descriptive word "shaker," used in connection with salt, had obtained a secondary meaning as salt made by complainant, it was immaterial whether it originally referred to salt used in a shaker, or to salt made by the religious sect known as Shakers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ☞3.]

2. TRADE-MARKS AND TRADE-NAMES ☞97 — ACTIONS — SCOPE OF RELIEF AWARDED.

While in some cases a trade-name will be protected only in limited territory, where the salt business. of both complainant and defendant was nation-wide, a decree protecting complainant's trade-name only in that part of the United States north of the thirty-eighth parallel and east of the 102d meridian, was improper.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ☞97.]

3. TRADE-MARKS AND TRADE-NAMES ☞85—ACTIONS—DISMISSAL WITHOUT PREJUDICE.

Where, though complainant untruthfully advertised that its salt was absolutely pure and free from gypsum, there was no untruthfulness or deception in its trade-name, it was proper to dismiss a bill for unfair competition and infringement without prejudice to the right to file a new bill after the untruthful advertising had been abandoned, instead of dismissing it absolutely.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. ☞85.]

Appeals from the District Court of the United States for the Southern District of New York.

Archibald Cox and Robert W. Byerly, both of New York City, for complainant.

Bassett, Thompson & Gilpatric, of New York City (Edward M. Bassett and Wilson W. Thompson, both of New York City, of counsel), for defendant.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. [1] We do not think it necessary to add much to the careful opinion of ·Judge Learned Hand in this case. It makes no difference what the word "Shaker" in connection with salt originally meant; that is, whether is was salt to be used in a shaker or salt made by the religious sect known as Shakers. It is a descriptive word, which has been shown to have obtained a secondary meaning as salt made by the complainant.

[2] We do not agree that protection of this trade-name shall be restricted, as it has been by the decree of the court below, to that part of the United States north of the thirty-eighth parallel and east of the

102d meridian. There have been cases where a trade-name has been protected only in limited territory, but the proofs show that the salt business of both parties to this suit is nation-wide.

[3] Although there is no decision of the Supreme Court giving to a complainant who has been guilty of untrue or misleading advertising a locus penitentiæ, as has been given to the complainant, there are some decisions in the lower courts to this effect. Moxie Case (C. C.) 153 Fed. 487; W. A. Gaines & Co. v. Turner-Looker Co., 204 Fed. 553, 123 C. C. A. 79. There is in this case no untruthfulness or deception in the name itself, but only in part of the complainant's advertising. We think it entirely equitable that the bill should be dismissed, not absolutely, but without prejudice to the right of the complainant hereafter to file a new bill, if it shall have shown that all untruthful advertising to the effect that its salt is absolutely pure and free from any gypsum has been abandoned.

The decree, modified by striking out the territorial limitation, is affirmed.