## KOPPEL INDUSTRIAL CAR & EQUIPMENT CO. v. ORENSTEIN & KOPPEL AKTIENGESELLSCHAFT et al.

(District Court, S. D. New York. April 28, 1926.)

1. War ⬳12—Purchaser from Alien Property Custodian of American branch of German company held to have proven facts entitling it to injunction against German company from soliciting business and from using certain trade-marks.

Purchaser of American branch of German company from Alien Property Custodian *held* to have proven facts entitling it to permanent injunction against the German company from soliciting business of former customers and from using certain trade-marks.

2. War ⬳12—Acts of German company, after sale by Alien Property Custodian of American branch, in attempting to obtain business and use of trade-marks, held to constitute unfair competition.

After sale of American branch of German company by Alien Property Custodian, acts

12 F.(2d)—64

of German company in attempting to obtain business and using trade-marks *held* to constitute unfair competition.

3. War ⬳12—Under Treaty of Berlin, German nationals must look to their own government for redress of any grievance, in connection with seizure and sale by Alien Property Custodian (Treaty of Berlin Aug. 25, 1921 [42 Stat. 1939]).

Under Treaty of Berlin Aug. 25, 1921 (42 Stat. 1939), German nationals must look to their own government for redress of any grievance, in connection with seizure and sale of property by Alien Property Custodian.

4. War ⬳12—German company held not required to account for profits made before granting injunction, where purchaser of American branch from Alien Property Custodian had made no complaint for two years, and during such period had placed orders itself with German company.

Where purchaser from Alien Property Custodian of American branch of German company was aware for nearly two years that German company was engaged in business in America before making complaint, and during such period had placed orders with German company itself, *held*, that German company was not required to account for any profits it may have made prior to granting injunction.

In Equity. Suit by the Koppel Industrial Car & Equipment Company against the Orenstein & Koppel Aktiengesellschaft, the Orenstein & Koppel Company, Limited, and others. Decree for complainant.

See, also, 289 F. 446.

Larkin, Rathbone & Perry and Albert Stickney, all of New York City, for plaintiff.

Hays, St. John & Moore and Arthur Garfield Hays, all of New York City, for defendant Orenstein & Koppel Aktiengesellschaft.

Duer & Taylor and George W. Taylor, all of New York City, for defendant Joseph.

GODDARD, District Judge. This is a suit in equity, in which the complainant prays for a permanent injunction restraining the defendants (1) from competing with complainant by carrying on a business similar to the business formerly conducted by the American branch, Orenstein-Arthur Koppel Company, in the United States and in the territory supplied by the American branch; (2) from soliciting the business of former customers of the American branch; (3) from using the trade-marks mentioned in the bill of complaint, or the names Orenstein and/or Koppel in various forms; and for an accounting from the defendants.

[1] An injunction pendente lite was granted upon a preliminary motion after an ap-

peal to the Circuit Court of Appeals. See Koppel Industrial Car & Equipment Co. v. Orenstein & Koppel Aktiengesellschaft et al., 289 F. 446. The decision of the Circuit Court of Appeals defines the law applicable to the facts set forth in those motion papers and in the affidavits filed therewith. The question now to be determined is whether complainant has, upon the trial, proven said facts entitling it to the permanent injunction. After hearing the testimony of the various witnesses and examining the facts, I find that the complainant has amply sustained, in substance, this burden.

The complainant bought from the Alien Property Custodian all the property and assets of every kind and description whatsoever and wheresoever situate or operating in the United States and all incidents and appurtenances thereto, including the business as a going concern and the good will of "Orenstein & Koppel-Arthur Koppel Aktiengesellschaft, known as the Orenstein-Arthur Koppel Company." This business, which was sold by the Alien Property Custodian, was known as the American branch of the German defendant corporations, and had its headquarters at Koppel, Pa. The inducement to the purchaser was the good will and the exclusive rights to do business in the territory served by the American branch at the time of the seizure by the Alien Property Custodian.

It appears, from the formal application filed under the provisions of Trading with the Enemy Act for a license to do business in the United States, that all the business carried on in the United States, or conducted through its various subsidiaries, branches, and agencies in Cuba, Porto Rico, the Philippine and Hawaiian Islands, Santo Domingo, Mexico, and certain states in South America, was allocated to the American branch at Koppel, Pa., and regarded as business belonging to that branch. This branch as a going concern is what the complainant purchased from the Alien Property Custodian. Some of the articles sold were made at the Koppel, Pa., plant; others were not made there. These statements in the applications, so far as they concerned the German corporation, were based upon statements made or obtained before communication with Germany was interrupted, and after which time the American branch functioned independent of control from Germany.

The purchaser, the complainant, carried on the business in the same way that it had been carried on previous to its sale, and in addition thereto advertised it extensively and informed the trade that it had purchased the said business, and it continued to use its registered trade-marks "O A K" and "O K A K" and the name "Orenstein-Arthur Koppel Company."

In June, 1920, the defendant Hellmann, who had been in the employ of the German company prior to the seizure, opened an office at No. 30 Church street, New York City, where the American company maintained its New York branch office, although later Hellmann moved his office to No. 50 Church street. The German company also opened an office in San Francisco, in the same building where the American company maintained its office. Just what authority Hellmann had from Germany is unknown, for the complainant was unable to produce the contracts existing between Hellmann and the German company, and the defendants evidently did not care to do so. Although Hellmann and his successor, Joseph, denied that they had a list of the old customers, it appears that they wrote to Berlin, and there was forwarded to them all the former order files for the United States and neighboring territory, and that they solicited trade from the old customers.

The following letter, one of a number offered in evidence by complainant, written by Orenstein & Koppel, A. G., of Germany, on their stationery, to a former customer of the American branch, indicates Hellmann's relationship to them and the effort to capture the business carried on by their former American branch:

"Berlin, S. W. 61, den. Sept. 18, 1920.

"Messrs. Hormiguero Central Corporation, 69 Wall Street, New York City—Dear Sirs: We beg to acknowledge receipt of your telegram reading: 'Cable price and delivery eight thousand steel ties for fifty six pound rails thirty inch gauge track mail blue prints could you ship to New York or Cuba' —and thank you very much indeed for your inquiry. We are very anxious to resume our former so pleasant business relations with you and wish to assure you that all your inquiries and orders will always find our most careful attention.

"We also beg to inform you that Mr. Louis E. Hellmann, room 1515, 30 Church street, New York, the former manager of our New York office, is now acting as our U. S. representative. We have communicated with Mr. Hellmann by cable with regard to your above inquiry and undoubtedly he will have called on you in the meantime. Prices and particulars will be submitted to you through

our Mr. Hellmann with the utmost possible dispatch.

"At the same time we beg to draw your kind attention to the fact that same as in former years we are in a position to supply locomotives, cars, spare parts, etc., of first-class quality and workmanship, and we will be very pleased to receive your inquiries for any articles you may require in this and similar lines.

"Yours very truly,

"Orenstein & Koppel
Aktiengesellschaft I. V.,
"Per Joseph."

[2] The distribution by the defendants of the old American catalogue No. 850, with the stamped inscription upon it, "Now Orenstein & Koppel, A. G."; sometimes the original fly-leaf containing a list of the old American branch offices being torn out, in other instances left in; the use of the imprint "O A K" in a circle; the location of defendants' offices in the same buildings in New York and San Francisco, in which the complainant carried on its business; the change by the defendants of the name under which business was solicited by them to one more nearly resembling the name of the American branch; the many other incidents and details disclosed in the record—indicate that customers would receive the false impression that they were dealing with the American concern, while in fact it was the German company.

The conclusion is irresistible that this was the end which the defendants had in view. The defendants had no right to do this, for not only had the complainant bought the exclusive right to carry on the business formerly conducted by the American branch of the German company, but, moreover, such tactics constituted unfair competition; it was not fair to the complainant, and it was a deception upon the public. While I have no doubt that customers were deceived in believing that they were dealing with the American company, even if it be not shown that any particular person has actually been misled, the natural and probable result of defendants' conduct would be to mislead the public. This is unfair competition. Rice & Hutchins, Inc., v. Vera Shoe Co., Inc. (C. C. A.) 290 F. 124; Miller Rubber Co. v. Behrend, 242 F. 515, 155 C. C. A. 291.

[3] Under the Treaty of Berlin entered into between the United States and Germany on August 25, 1921 (42 Stat. 1939), the German nationals must look to their own government for redress of any grievance, if any exists, in connection with the seizure and sale by the Alien Property Custodian.

[4] In view of the fact that complainant was aware for a period of nearly two years that defendants were engaged in business in America before complainant made any serious effort to stop it, and further that complainant itself placed orders with the defendants during a part of this period, it seems to me that defendants should not be required to account to complainant for any profits that they may have made prior to the granting of the injunction.

Accordingly complainant may enter a decree upon the usual notice enjoining the defendants (1) from competing with complainant by carrying on a business similar to the business formerly conducted by the American branch, Orenstein-Arthur Koppel Company in the United States and in the territory supplied by the American branch; (2) from soliciting the business of former customers of the American branch; (3) from using the trade-marks mentioned in the bill of complaint, or the names Orenstein and/or Koppel in various forms and denying complainant's prayer for an accounting.