**MULHENS & KROPFF, Inc., v. FERD. MUELHENS, Inc.**

No. 342.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1930.

L. HAND, Circuit Judge, dissenting.

For opinion below, see 38 F.(2d) 287; for opinion denying preliminary injunction, see (D. C.) 22 F.(2d) 191.

Manvel Whittemore and Lucius E. Varney, both of New York City (Emory R. Buckner, of New York City, of counsel), for plaintiff.

Katz & Sommerich, of New York City (Maxwell C. Katz, Milton Handler, Raymond T. Heilpern, and Edwin M. Borchard, all of New York City, of counsel), for defendant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The very thorough and able opinion of the District Court sets forth the facts in great

---

detail. We shall repeat them only so far as seems necessary to outline the controversy and to present the questions which we deem decisive of this appeal.

The litigation is between two New York corporations, each using, and claiming the right to use, the trade-mark "4711" upon eau de cologne and other toilet preparations. For almost one hundred and forty years the Muelhens family of Cologne, Germany, has been engaged in manufacturing eau de cologne under a secret recipe handed down from father to son. Its business began at 4711 Glockengasse in that city in 1792, and its cologne and some other toilet preparations have been advertised and marketed throughout the world under the trade-mark "4711." The defendant corporation, Ferd. Muelhens, Inc., was recently established by the German house as its selling agent in the United States. It has sold toilet preparations under the aforesaid trade-mark, and has advertised that the cologne which plaintiff sells under the same mark is not the genuine "4711" eau de cologne and is not made under the original secret formula.

The plaintiff claims the exclusive right to use this trade-mark in the United States by virtue of a seizure by the Alien Property Custodian, a sale by the Custodian to Kropff, and Kropff's assignment to the plaintiff corporation, which he caused to be organized in 1920. It appears that Kropff came to New York in 1878 to establish, in partnership with Julius Muelhens, a brother of Ferdinand, who was then proprietor of the German house, an agency for the sale of its products in the United States. In 1881 the selling arrangement was evidenced by a partnership agreement between Kropff and Ferdinand Muelhens. This gave the firm of Mulhens & Kropff a revocable license to use the trademarks and labels of the German house and, "to have them registered, without prejudice, however, to the continued sole proprietorship of Ferdinand Muelhens" therein. Under this agreement the trade-mark "4711" was registered in 1882 by the firm of Mulhens & Kropff. In 1889 a new partnership agreement was formed between Kropff and Ferdinand Muelhens which recited that the purpose of the business was "the importation of products manufactured by Ferdinand Muelhens in Cologne, and the manufacture of eau de cologne, glycerine soaps and other perfumeries under the trade-marks of the said Ferdinand Muelhens, of Cologne, as well as under trade-marks which the new firm of Mulhens & Kropff may possibly accept." Muelhens was obligated to supply at cost the raw products and compounded essences required for the business and the firm was obligated to buy the raw products from him. In the event of dissolution of the firm, Muelhens reserved the right to take over the business and to have all recipes forthwith returned to him. The partnership was to continue for ten years and to be renewed thereafter for successive five-year periods unless notice of termination was previously given. This agreement continued unrevoked up to the entry of the United States into the European war. In 1905 the trade-mark "4711" was re-registered by the partnership; and it was renewed by the plaintiff corporation in 1925. On May 6, 1918, the Alien Property Custodian demanded of Kropff the entire interest of Ferdinand Muelhens in the firm of Mulhens & Kropff, and a supplementary demand specifically enumerated the "4711" trade-mark. In 1920 Kropff, who in the meantime had continued the business on his own account and under a license to liquidate the Muelhens interest, purchased from the Custodian all the seized rights of Muelhens, and forthwith Kropff assigned to the plaintiff the business, good will, and trade-marks formerly belonging to the firm of Mulhens & Kropff. Thereafter the plaintiff sold its products under the "4711" label and advertised that they were prepared in accordance with the original recipe; but, after denial of its application for a preliminary injunction on the ground that its assertion of manufacture under the secret formula was false, it abandoned this form of advertising.

The decree, from which both parties have appealed, finds that the plaintiff has the exclusive right to use the trade-mark "4711" in the United States, and that the defendant has infringed. It finds also that prior to April, 1917, the firm of Mulhens & Kropff had applied this trade-mark, in connection with the sale of eau de cologne, eau de cologne face powder, and eau de cologne smelling salts, only to such cologne, face powder, and smelling salts as were manufactured in accordance with secret recipes owned solely by the German house of Muelhens; that neither plaintiff nor its immediate predecessor, Kropff, knew the secret recipes; but nevertheless, for ten years they had applied said trade-mark to eau de cologne, face powder, and smelling salts manufactured under different formulas, and had falsely made public statements that their products were made under the original secret recipes. Accordingly, infringement by defendant was enjoined only upon condition that plaintiff would purge its fault until December 31,

1937, by applying to each bottle or package of eau de cologne, eau de cologne face powder, and eau de cologne smelling salts sold under its trade-mark "4711" a label stating, "Not manufactured in accordance with the original secret recipe in use since 1792 and before 1917." The decree also denied an accounting and left each party to bear its own costs.

The opinion below first discusses the chief dispute of fact, namely, whether or not Kropff had knowledge of the secret recipe for 4711 eau de cologne. This was decided adversely to the plaintiff, and it will suffice to say that we consider the correctness of the finding fully demonstrated. Indeed, upon the argument on appeal this fact was conceded.

The legal rights of the parties prior to the declaration of war were then considered, the court concluding that Muelhens individually was the owner of the secret recipe and of the trade-mark, the registration of which inured to the benefit of the firm as licensee for the duration of the partnership. Attention was then directed to the effect of the declaration of war and the Alien Property Custodian's seizure and assignment. It was held that the war terminated the partnership, and that the Custodian could not seize, and did not purport to seize, the secret recipe, but that he did seize from Muelhens and convey to Kropff "the potential good will of any business in '4711' products which might thereafter be established in the United States," and that the plaintiff as successor to Muelhens' American business may apply the trade-mark to articles which approximate those made under the secret recipe, although the recipe itself was not transferred nor known to the plaintiff or to Kropff, its predecessor in title.

We are in entire accord with the opinion below except upon the one point last stated. As applied to eau de cologne, the mark "4711" meant two things: (1) Origin in the house of Muelhens; and (2) manufacture under a secret recipe. The secondary meaning is now disputed, but on the record it is clear, and indeed plaintiff's attorney conceded in his brief filed on the motion for a preliminary injunction that " * * * the long continued representations, in the present case, with respect to the formula of 4711 cologne made and sold in this country, * * * impressed upon the mark a substantial guarantee that any cologne bearing said mark was made according to said original recipe; so that, in 1917, neither the partnership nor Kropff could have properly sold any other cologne as 4711 than that of the original recipe, without expressly stating or in some way bringing to the attention of the public that said cologne was not according to the original recipe although bearing the trademark."

Plaintiff has succeeded to Muelhens' business in this country, which would entitle plaintiff to use the mark in its first meaning. It has not succeeded to Muelhens' ownership of the recipe, and therefore may not truthfully use the second meaning. The defendant, on the other hand, if allowed to use the mark, will truthfully represent the quality of its article, but will misrepresent that it is continuing Muelhens' former American business. Under such circumstances, which user of the mark has the superior right? Logic will hardly solve the problem. On the one hand, it is said that to allow one who does not know the recipe to seize the good will dependent on marketing the product of the secret formula runs counter to the admitted principle that good will cannot be assigned in gross; on the other, that, since Muelhens would have had the privilege of somewhat changing the formula and still applying to the modified product the old mark, his successor in business should have the same privilege, and the right to prevent Muelhens' user. While the question is very doubtful, a majority of the court believe that assignment of the recipe is essential to give the assignee the exclusive right to a mark which denotes a product manufactured thereunder. Otherwise the public will be unable to procure the genuine product under the name by which it has always been known. The law affords trade-mark protection to a merchant in order that prospective customers may not be lured away by one who counterfeits his goods. Those who insist upon the genuine 4711 eau de cologne are not prospective customers of the plaintiff, for he cannot supply it. On the whole we think the plaintiff should not be protected in the use of a mark which he can himself use only deceptively. See Cotton v. Gillard, 44 L. J. Ch. 90; Lecouturier v. Rey, 1910 A. C. 262; Ingenohl v. Wing On & Co., 44 Rep. Pat. Cas. 343, 352; G. H. Munn & Co., 39 Rep. Pat. Cas. 379, 389; Baglin v. Cusenier, 221 U. S. 580, 595, 31 S. Ct. 669, 55 L. Ed. 863; Baldwin v. Von Micheroux, 5 Misc. Rep. 386, 389, 25 N. Y. S. 857.

With respect to articles as to which the 4711 mark has not a secondary meaning but connotes only origin in the German house of Muelhens, the injunction was properly issued and an accounting should be granted.

As to the few articles as to which the mark connotes preparation under a secret formula, the injunction should be denied.

The decree is reversed for further proceedings in conformity herewith.

L. HAND, Circuit Judge (dissenting).

The transfer of a trade-mark along with a business is lawful, though it is somewhat doubtful whether customers who have come to rely upon the mark as the warrant for a certain standard of excellence, or commercial integrity, or the like, are in such cases really getting what they suppose. Under modern conditions, however, where the personnel of a business is so shifting, this consideration has not been controlling; it is assumed that the successor will maintain those qualities which the mark has come to identify. At any rate the practice has been long recognized and the public probably reckons with it. Muhlens, after the dissolution of the firm by the breaking out of war, was the sole owner of the American business; Kropff had no rights but to his share of the past profits, and the Custodian by seizing Muhlens's rights became vested with the business, which included his chattels, choses in action and his good will, that is, the likelihood that customers would continue to trade with him and that he might gain others. My brothers believe, as I do, that this authorized the plaintiff to use the marks in selling any goods on which it had come to mean no more than the accustomed source, Muhlens or Muhlens's successor; when applied to cologne, though made under the secret recipe, it meant the same. If the case had contained nothing else, the plaintiff must win.

However, so far as applied to cologne, made under the recipe, the mark meant more. It had for so long been associated with declarations that the cologne was made under the recipe, that two meanings had coalesced; these were, (1) "emanating from the old source," (2) "made under the old recipe." The plaintiff could truthfully say the first; it could not say the second; in fact it said both. But when the defendant came into the market and sold cologne made under the recipe but by Muhlens, it made the same representations, and the first was untrue, while the second was true. I say that the first was untrue, because the cologne did not come from the old source, which was the American branch. Our decision in Koppel v. Orenstein, 289 F. 446, Id. (D. C.) 12 F.(2d) 1009, went so far, even after we had modified it. I agree that the right here becomes very thin, since in fact Muhlens was always the real source; and the essences were made by him in Germany and sent over to be made up here. Customers presumably cared nothing about the place where the cologne was made up, and much about the essence. Still, it was Muhlens's rights that were sold, including all but the recipe. It can make no difference where he made the essences. We must hold the marks to have been transferred unless we are to say that no separate branch can be sold without the whole business. The case stands otherwise as to the use of proper names.

Therefore, the plaintiff's path still seems to me clear except for the fact that it has been deceiving its customers; it has led them to suppose they were getting cologne made under the recipe when they were not. This would of course be fatal to any bill in equity while it continued, but it is possible to purge the user of the deceit, certainly if that be done long enough before bill filed to make certain that its effect has passed. Moxie Nerve Food Co. v. Modox Co. (C. C.) 153 F. 487, affirmed 162 F. 649 (C. C. A. 1); Diamond Crystal Salt Co. v. Worcester Salt Co., 221 F. 66 (C. C. A. 2); Gaines v. Turner-Looker Co., 204 F. 553 (C. C. A. 6); George G. Fox Co. v. Best Baking Co., 209 Mass. 251, 95 N. E. 747. The argument of the District Court seems to me unanswerable, that as Muhlens could have changed his recipe, his successor may, if he declares so plainly enough to avoid deception. The first of the two meanings would then alone survive; the plaintiff having made it clear that the cologne was not of the old kind, the mark would stand merely for its origin, just as in the case of any of its other products.

However, the plaintiff did not do this; it had a change of heart only when the suit was brought, and that was too late. Alaska Packers' Association v. Alaska Importing Co. (C. C.) 60 F. 103; Diamond Crystal Salt Co. v. Worcester Salt Co., 221 F. 66 (C. C. A. 2); Vick Medicine Co. v. Vick Chemical Co., 11 F.(2d) 33 (C. C. A. 5). I think that it ought to be too late, unless by the time the suit gets to final decree the probationary period has passed. The District Court thought that only ten years would be enough under the circumstances, and I see no reason to think that less will do; in any case as my views are not to prevail, that is a detail which I need not consider. But until the mark has been so purged, the plaintiff ought not to be able to protect it; and for this reason the decree should be modified. I do not see that we need dismiss the bill, certainly not so as to make it res judicata, as we are doing. The

parties are before us now and it is not necessary, I believe, to put them to another equally burdensome litigation. What seems right to me is to give a decree in the terms of the court below, but to stay the issue of any writ until the probationary period has ended. Till then I do not believe that the plaintiff should be able to enjoin the defendant's use of the mark; thereafter it may. It may be argued that this is in effect a declaratory decree, but this is not true. The bill was filed for relief and relief is decreed, though it is suspended until the plaintiff performs the prescribed condition. The suit still remains a contentious proceeding; equity may always delay its final action. Maas v. Lonstorf, 166 F. 41 (C. C. A. 6).

Nor can I see, if that were done, that those who wish to buy the old cologne could not get it under its old name. The name is nothing as name; by hypothesis before they become unable to get it under that name, its descriptive significance will have gone, except in so far as the defendant's own continued user may destroy the effect of the plaintiff's efforts. This can hardly be charged against the plaintiff.

I think the decree should be modified as I have said, but except for that it should be affirmed.